IN THE MATTER OF THE ALAMANCE COUNTY COURT FACILITIES

No. 191PA89

(Filed 12 June 1991)

### 1. Courts § 3 (NCI4th)— inherent power defined
A court's inherent power is that belonging to it by virtue of its being one of three separate, coordinate branches of government.

**Am Jur 2d, Courts §§ 78, 79.**

### 2. Courts § 3 (NCI4th)— scope of inherent power
Generally speaking, the scope of a court's inherent power is its authority to do all things that are reasonably necessary for the proper administration of justice.

**Am Jur 2d, Courts §§ 78, 79.**

### 3. Courts § 3 (NCI4th)— scope of inherent power
Just as the inherent power of the judiciary is plenary within its branch, it is curtailed by the constitutional definition of the judicial branch and the other branches of government.

**Am Jur 2d, Courts §§ 78, 79.**

### 4. Courts § 3 (NCI4th)— inherent power—overlap with powers of legislature
The scope of the inherent power of a court does not, in reality, always stop neatly short of explicit, exclusive powers granted to the legislature, but occasionally must be exercised in the area of overlap between branches.

**Am Jur 2d, Courts §§ 78, 79.**

### 5. Courts § 3 (NCI4th)— inaction by legislative body—use of inherent power
When inaction by those exercising legislative authority threatens fiscally to undermine the integrity of the judiciary, a court may invoke its inherent power to do what is reasonably

necessary for the orderly and efficient exercise of the administration of justice.

**Am Jur 2d, Courts §§ 78, 79.**

**6. Courts § 3 (NCI4th); Counties § 20 (NCI4th)— provision of adequate court facilities—inherent power of court to order**

Although statutes obligating counties and cities to provide judicial facilities do not expressly pass the duty of providing adequate facilities to the court in case of default of local authorities, the court has the inherent authority to direct local authorities to perform that duty.

**Am Jur 2d, Courts §§ 78, 79.**

**7. Courts § 3 (NCI4th)— inherent power—proper administration of justice—limitations**

Even in the name of its inherent power, the judiciary may not arrogate a duty reserved by the constitution exclusively to another body, nor may it violate the constitutional rights of persons brought before its tribunals. Furthermore, doing what is reasonably necessary for the proper administration of justice means doing no more than is reasonably necessary.

**Am Jur 2d, Courts §§ 78, 79.**

**8. Courts § 3 (NCI4th)— inherent power—limitations**

The inherent power of the court is a tool to be utilized only where other means to rectify the threat to the judicial branch are unavailable or ineffectual, and its wielding must be no more forceful or invasive than the exigency of the circumstances requires.

**Am Jur 2d, Courts §§ 78, 79.**

**9. Courts § 3 (NCI4th)— inherent power—obeisance to established procedural methods—minimal encroachment upon legislative authority**

Beyond the definition of its powers imposed by the constitution, the court's judicious use of its inherent power to reach toward the public purse must recognize two critical limitations: (1) it must bow to established procedural methods where these provide an alternative to the extraordinary exercise of its inherent power; and (2) in the interests of the future harmony of the branches, the court in exercising that power must

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

minimize the encroachment upon those with legislative authority in appearance and fact.

**Am Jur 2d, Courts §§ 65, 78, 79.**

**Inherent power of court to compel appropriations or expenditure of funds for judicial purposes. 59 ALR3d 569.**

10. **Courts § 3 (NCI4th) — inherent power — obeisance to established procedural methods**

Obeisance to established procedural methods includes a respect for statutory remedies and constraints when those do not stand in the way of obtaining what is reasonably necessary for the proper administration of justice.

**Am Jur 2d, Courts §§ 78, 79.**

11. **Counties § 20 (NCI4th) — county commissioners — compelling adequate facilities — remedies not restricted to election and indictment**

Holdings in earlier cases restricting the means of compelling county commissioners to remedy inadequate public facilities to elections and indictment are explicitly overruled.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 189, 547.**

12. **Mandamus § 2 (NCI3d) — ministerial duty — abuse of discretion**

Mandamus is the proper remedy to compel public officials to perform a purely ministerial duty imposed by law; it generally may not be invoked to review or control the acts of public officers respecting discretionary matters. However, mandamus will lie to review discretionary acts when the discretion appears to have been abused or the action taken arbitrarily, capriciously, or in disregard of law.

**Am Jur 2d, Mandamus § 315.**

13. **Counties § 20 (NCI4th); Courts § 3 (NCI4th) — inherent power — requiring provision of court facilities — means employed**

The means chosen by a court to compel county commissioners to furnish suitable court facilities is of critical importance to the question whether the court has unreasonably exercised its inherent power, for it signals the extent of the judiciary's intrusion on the county's legislative authority.

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

**Am Jur 2d, Courts §§ 78, 79; Municipal Corporations, Counties, and Other Political Subdivisions § 278.**

**14. Counties § 20 (NCI4th) — county commissioners — duty to provide judicial facilities — ministerial**

The statutory duty of county commissioners to provide judicial facilities is ministerial in all but the details of the exercise of such duty — the commissioners' interpretation of what is suitable or adequate.

**Am Jur 2d, Courts §§ 78, 79; Municipal Corporations, Counties, and Other Political Subdivisions § 278.**

**15. Counties § 20 (NCI4th); Mandamus § 2 (NCI3d) — county commissioners — failure to provide adequate court facilities — mandamus**

When a county commissioner has failed to exercise his ministerial duty to provide adequate court facilities, or when he has exercised his discretion in disregard of the law, the writ of mandamus may be employed to obtain an effective, timely remedy.

**Am Jur 2d, Mandamus § 315.**

**16. Counties § 20 (NCI4th); Courts § 3 (NCI4th); Mandamus § 2 (NCI3d) — county commissioners — ex parte order to provide judicial facilities — mandamus proper remedy**

An *ex parte* order requiring county commissioners immediately to take steps to provide specific judicial facilities in accord with their statutory obligations exceeded what was reasonably necessary for the proper administration of justice because the *ex parte* nature of the order overreached the minimal encroachment onto the powers of the legislative branch that must mark a court's judicious use of its inherent power, and the order's dictate regarding the precise location and specific minimum dimensions of what constituted "adequate" court facilities improperly divested the commissioners of discretionary decisions within their statutory duty. A more reasonable, less intrusive procedure would have been for the court, in the exercise of its inherent power, to summon the commissioners under an order to show cause why a writ of mandamus should not issue, which order would call attention to their statutory duty and their apparent failure to perform that duty. If after hearing it was determined that the commissioners had indeed

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

failed to perform their duty, the court could order the commissioners to submit a plan to the court within a reasonable time.

**Am Jur 2d, Mandamus § 315.**

17. **Courts § 3 (NCI4th) — inherent power — abridgment of substantive rights**

No procedure or practice of the courts, even those exercised pursuant to their inherent powers, may abridge a person's substantive rights.

**Am Jur 2d, Courts §§ 78, 79.**

18. **Counties § 20 (NCI4th); Constitutional Law § 108 (NCI4th) — provision of court facilities — order not binding on nonparties**

County commissioners are not bound by an order requiring them to provide specific judicial facilities where they were not parties to the action from which the order issued.

**Am Jur 2d, Courts § 105.**

ON certiorari pursuant to N.C. R. App. P. 21, to review the 5 May 1989 order entered by *Hight, J.,* at the 24-25 April Civil Session of ALAMANCE County, the General Court of Justice, Superior Court Division. Heard in the Supreme Court 11 December 1989.

*S.C. Kitchen, Alamance County Attorney, for petitioner-appellants.*

*Lacy H. Thornburg, Attorney General, by Henry T. Rosser, Special Deputy Attorney General, for the State, respondent-appellee.*

EXUM, Chief Justice.

Initiated by a hearing ordered by a superior court judge to inquire into the adequacy of the Alamance County court facilities, this case probes the scope of the court's inherent power to direct county commissioners to ameliorate such facilities and the proper means of effecting that end. We hold that such power exists, but that the order invoking it here is procedurally and substantively flawed: the commissioners against whom the order was directed were not made parties to the action, the order was *ex parte,* and it intruded on discretion that properly belonged to the commissioners.

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

I.

On 2 March 1989, the Honorable Henry W. Hight, Jr., Superior Court Judge Presiding in the County of Alamance, issued an order directing the Grand Jury to inspect the Alamance County jail and court facilities. The Grand Jury responded with a report finding numerous courthouse and jail defects and recommending that the 1924 courthouse be remodeled and converted to other uses, that a new courthouse be built, and that an existing courthouse annex be renovated and jail space expanded.

On 17 March 1989, Judge Hight issued an order reiterating the Grand Jury's conclusions and scheduling a hearing for 24 April 1989 "to make inquiry as to the adequacy of the Court facilities" in Alamance County. The judge appointed an attorney to represent the court and to present evidence at the hearing. The sheriff was directed to serve the five members of the Alamance County Board of County Commissioners with copies of the order and notice of the hearing. The notice informed the commissioners of their entitlement to be present, along with their attorneys, and to offer evidence or contentions regarding the adequacy of court facilities "to provide for the proper administration of justice in Alamance County."

Four commissioners filed motions to dismiss for insufficiency of process, for failure to join a necessary party and to name a real party in interest, for lack of subject matter jurisdiction; a motion for recusal; and a demand for a jury trial. In an order filed 4 April 1989, Judge Hight struck these motions, stating that the movants were not parties to the action and thus were without standing.

Notice of the hearing was succeeded by subpoenas issued by Judge Hight to each of the five commissioners before the hearing, ordering that they appear and testify on 24 April 1989.

Following the hearing, at which the commissioners were present but did not participate, Judge Hight issued an order based upon copious findings of fact enumerating the inadequacies of the physical facilities provided by Alamance County to the court system. The findings included citation to the statutory duties of the Clerk of Court to secure and preserve court documents, N.C.G.S. § 7A-109(a)(3), to statutory provisions requiring secrecy of grand jury proceedings, N.C.G.S. § 15A-623(e), to statutory requisites that counties in which a district court has been established provide

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

courtrooms and judicial facilities, N.C.G.S. § 7A-302, and to the open courts provision, Art. I, § 18 of the North Carolina Constitution—all of which were potentially violated by the condition of pertinent facilities in Alamance County. In addition, the findings stated that the right to a jury trial assured in Article I, §§ 24 and 25 of the N.C. Constitution was jeopardized where jury and grand jury deliberations were not dependably private and secure and that litigants' due process rights were similarly at risk for lack of areas where they could confer confidentially with their attorneys. The findings included an assessment of the volume and increase of court business over more than a decade; an accounting of total county revenues and fund balance at the close of the 1987-88 fiscal year, plus undesignated unreserved funds remaining in the fund as of April 1989; and stated minimum square footage requisites for Alamance County's various judicial facilities.

Finally, the findings stated that the failure of the county to provide adequate court facilities violated the constitutional limitation under Article IV, § 1, that the General Assembly "(and Alamance County as part of the State government which has been delegated the responsibility to provide court facilities)" was powerless to deprive the judicial department of any power or jurisdiction rightfully pertaining to it as a co-ordinate department of government.

The order asserted that the court's jurisdiction over the question of adequate court facilities was authorized not only in Article IV, § 12 of the N.C. Constitution, but through its inherent power "necessary for the existence of the Court, necessary to the orderly and efficient exercise of its jurisdiction, and necessary for this Court to do justice."

Based upon its findings of fact, the order concluded that the courtrooms and related judicial offices for Alamance County were "grossly inadequate, being in the large either obsolete, poorly designed, or nonexistent." The effects of such inadequacies included denying access to the handicapped and physically disabled, thwarting the effective assistance of counsel to litigants in violation of the law of the land, jeopardizing the right to trial by jury in civil and criminal cases, and causing delays in the prosecution and defense of civil cases. In addition, the lack of detention rooms constituted a clear and present danger to persons present at criminal judicial proceedings as well as to the public at large.

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

The order also resolved that the county was financially able to provide adequate judicial facilities and that it was the duty of the county acting through its commissioners to make these provisions.

The order's conclusions were followed by a "Recommendation" which took particular notice of the fact of "undesignated unreserved funds of $15,655,778.00 as of June 30, 1988," with which the commissioners could begin construction of a new courthouse. This recommendation recognized, however, that "[t]he decision of whether or not to construct a new Courthouse, as opposed to providing the courtrooms and related judicial facilities as required by law, is within the sound discretion of the County Commissioners."

Despite the precatory nature of its recommendations, the order culminated with the directive that the county, acting through its commissioners, immediately take steps to provide adequate facilities, first by providing adjacent additional facilities, for which minimum square footage was stated, and, second, by modifying the existing courthouse and annex for access to the handicapped. The order specified, *inter alia*,

2. That as a minimum, in addition to the present facilities in Alamance County, Alamance County must provide in close proximity to and adjacent to the present facilities the following:

(a) One (1) Superior Court Courtroom of 1600 square feet, minimum, with two restrooms of 35 square feet, minimum;

(b) One (1) Superior Court Jury Deliberation Room of 300 square feet, minimum;

(c) One (1) Superior Court Court Reporter Room of 80 square feet, minimum;

(d) One (1) Superior Court Judge's Chambers, consisting of conference area of 160 square feet, minimum, and toilet of 40 square feet, minimum;

(e) One (1) Superior Court Detention Room of 140 square feet, minimum;

(f) Two (2) Superior Court Attorney-Client Rooms of 100 square feet each, minimum;

(g) One (1) Grand Jury Hearing Room of 450 square feet, minimum;

(h) One (1) Jury Pool Room of 1,000 square feet, minimum;

(i) One (1) public waiting room of 800 square feet, minimum;

(j) One (1) District Court Courtroom of 1300 square feet, minimum;

(k) One (1) District Court Jury Deliberation Room of 330 square feet, minimum, with two rest rooms of 35 square feet each, minimum;

(l) One (1) District Court Reporter Room of 80 square feet, minimum;

(m) One (1) District Court Judge's Chambers, consisting of conference area of 160 square feet, minimum, and toilet of 40 square feet, minimum;

(n) One (1) District Court Detention Room of 140 square feet, minimum;

(o) Two (2) District Court Attorney-Client Rooms of 100 square feet each, minimum;

(p) Hearing Room of 600 square feet, minimum, and anteroom of 175 square feet, minimum;

(q) Such additional space for the Clerk of Superior Court as is necessary to bring the total office space up to 6,840 square feet, minimum and located such that security of records can be provided;

(r) Adequate furniture for the appropriate use of the above.

3. That Alamance County acting by and through the Board of Commissioners for Alamance County must modify the existing Courthouse and Courthouse Annex facilities in order that the handicapped and physically disadvantaged have free and open access to court proceedings and the Clerk of Court's office.

The order required the Board of County Commissioners to file written response within thirty days, setting forth the actions the county intended to take in compliance with its mandate.

On 11 May 1989 this Court issued writs of supersedeas and certiorari upon petition by the members of the Board of Commissioners for Alamance County. We review the order in the exercise

**IN RE ALAMANCE COUNTY COURT FACILITIES**

[329 N.C. 84 (1991)]

of our general supervisory authority over the proceedings of the superior courts. N.C. Const. art. IV, § 12.

In their briefs appellants raise issues regarding the jurisdiction and the power of the trial court to initiate this action and to issue its order, as well as questions whether the order was binding on persons not parties to the action, whether the commissioners were entitled to a jury trial, and whether the trial judge initiating the matter should have recused himself from presiding over the hearing. These questions are subsumed in determining whether this case presents the circumstances under which a court's "inherent power" may be invoked and whether the superior court here followed proper procedures in its exercise of that power.

II.

The judicial power of this state is "vested in a Court for the Trial of Impeachments and a General Court of Justice," and the latter constitutes "a unified judicial system for purposes of jurisdiction, operation, and administration," and includes a Superior Court Division. N.C. Const. art. IV, §§ 1, 2. "The Superior Court, being a constitutional body, must be governed by the same law as this Court, and is under the same protection from legislative interference, so far at least as its inherent rights and powers are concerned, which are specially shielded by the Constitution against infringement." *Ex Parte McCown*, 139 N.C. 95, 107, 51 S.E. 957, 962 (1905).

[1] A court's inherent power is that belonging to it by virtue of its being one of three separate, coordinate branches of the government. *Id.* at 105-106, 51 S.E. at 961. For over a century this Court has recognized such powers as being plenary within the the judicial branch—neither limited by our constitution nor subject to abridgement by the legislature. *See, e.g., Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 695 (1987). In fact, the inherent power of the judicial department is expressly protected by the constitution: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government . . . ." N.C. Const. art. IV, § 1. *See Rencher v. Anderson*, 93 N.C. 105, 107 (1885) ("[This Court] and its jurisdiction are established by the Constitution—it has all the powers that by general principles appertain to such a court"); *Beard v. N.C. State Bar*, 320 N.C. at 129, 357 S.E.2d at 695 ("The inherent power of the

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

Court has not been limited by our constitution; to the contrary, the constitution protects such power"). Inherent powers are critical to the court's autonomy and to its functional existence: "If the courts could be deprived by the Legislature of these powers, which are essential in the direct administration of justice, they would be destroyed for all efficient and useful purposes." *Ex Parte Schenck*, 65 N.C. 353, 366 (1871), quoted in *Ex Parte McCown*, 139 N.C. at 106, 51 S.E. at 961.

[2] Generally speaking, the scope of a court's inherent power is its "authority to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. at 129, 357 S.E.2d at 696. *See Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 54, n.***, 274 A.2d 193, 198 n.9, *cert. denied, Tate v. Pennsylvania ex rel. Jamieson*, 402 U.S. 974, 29 L. Ed. 2d 138 (1971) (quoting *In re Surcharge of County Commissioners*, 12 Pa. Dist. & Co. R. 471: "That courts have inherent power to do all things that are reasonably necessary for the proper administration of their office within the scope of their jurisdiction is a well-settled principle of law."). This Court has upheld the application of the inherent powers doctrine to a wide range of circumstances, from dealing with its attorneys, *Gardner v. N.C. State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986), to punishing a party for contempt, *Ex Parte McCown*, 139 N.C. 95, 51 S.E. 957.

Typically, however, the exercise of inherent power by courts of this state has been limited to matters discretely within the judicial branch. *See, e.g., Crist v. Moffatt*, 326 N.C. 326, 337, 389 S.E.2d 41, 48 (1990) (Trial court's broad, inherent discretionary power includes control of course of trial so as to prevent injustice to any party); *In re Mental Health Center*, 42 N.C. App. 292, 296, 256 S.E.2d 818, 821, *cert. denied*, 298 N.C. 297, 259 S.E.2d 298 (1979) (in proceedings to determine whether disclosure of privileged information was necessary for proper administration of justice in criminal action, superior court has inherent power to assume jurisdiction and issue necessary process in order to fulfill its mission of administering justice efficiently and promptly). *See also* cases cited in *Beard v. N.C. State Bar*, 316 N.C. at 129, 357 S.E.2d at 695.

[3] Just as the inherent power of the judiciary is plenary within its branch, it is curtailed by the constitutional definition of the judicial branch and the other branches of government. Not only has the actual, practical exercise of inherent judicial power in this

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

state's jurisprudence been confined to distinctly judicial matters, but powers granted by the North Carolina Constitution to the legislative branch have led commentators to question the extent to which North Carolina courts can actually exercise such power, despite Article IV's broad grant to the judiciary of independence and plenary power over its branch. *See* Mallard, *Inherent Power of the Courts of North Carolina*, 10 Wake Forest L. Rev. 1, 7 (1974). For example, the Constitution authorizes the General Assembly, not the judiciary, to provide for an administrative office of the courts to carry out constitutional provisions for the judiciary, N.C. Const. art. IV, § 15, and to set a schedule of court fees and costs and to regulate salaries and emoluments of all judicial officers. N.C. Const. art. IV, §§ 20, 21. The General Assembly has a constitutional role in the organization and administration of all but this Supreme Court, N.C. Const. art. IV, §§ 7, 9, 10, 12, as well as in the assignment and tenure of judges and justices under a variety of circumstances. *See* N.C. Const. art. IV, §§ 8, 9, 10, 17.

For purposes of reviewing the superior court order before us, two constitutional provisions that define the scope of the court's inherent power are particularly notable—the prohibition against drawing public money from state and local treasuries except by statutory authority, N.C. Const. art. V, § 7, and the exclusive grant of the power of taxation to the legislative branch, N.C. Const. art. V, § 2. These limitations have been scrupulously heeded by North Carolina courts. *See, e.g., State v. Davis*, 270 N.C. 1, 153 S.E.2d 749 (1967) (judgment ordering attorneys be paid from Indigent Defense Fund established by General Session Laws repugnant to N.C. Const. art. XIV, § 3 (now art. V, § 7(1)); *DeLoatch v. Beamon*, 252 N.C. 754, 757, 114 S.E.2d 711, 713 (1960) (power to levy taxes vests exclusively in the legislative branch of the government); *Gardner v. Retirement System*, 226 N.C. 465, 38 S.E.2d 314 (1946) (monies paid to state treasurer under state law become public funds which may be disbursed only in accordance with legislative authority). These constitutional provisions do not curtail the inherent power of the judiciary, plenary within its branch, but serve to delineate the boundary between the branches, beyond which each is powerless to act. "The courts have absolutely no authority to control or supervise the power vested by the Constitution in the General Assembly as a coordinate branch of the government." *Person v. Watts*, 184 N.C. 499, 503, 115 S.E. 336, 339 (1922). "A defect of jurisdiction exists where a Superior Court of general

jurisdiction acts upon a subject which under the Constitution . . . is 'reserved to the exclusive consideration of a different . . . political tribunal.' In such cases the exercise of power is usurpation." *Henderson County v. Smyth*, 216 N.C. 421, 422, 5 S.E.2d 136, 137 (1939) (quoting *Burroughs v. McNeill*, 22 N.C. 297, 301 (1839) ).

The question presented here is the validity of an order, ostensibly authorized by the issuing court's inherent power, which requires local officials to supply specific judicial facilities in accord with their statutory obligations, and which rests upon findings of fact and conclusions of law that analyze not only the exact extent and exigency of the need, but also the financial resources at the disposal of the officials. In addressing this issue, we must look freshly at the separation of powers provision in the North Carolina Constitution, with an eye to the actual constitutional, pragmatic, and philosophical limitations on the power granted therein.

[4] The scope of the inherent power of a court does not, in reality, always stop neatly short of explicit, exclusive powers granted to the legislature, but occasionally must be exercised in the area of overlap between branches. The North Carolina Constitution provides: "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 4.[1] The perception of the separation of the three branches of government as inviolable, however, is an ideal not only unattainable but undesirable. An overlap of powers constitutes a check and preserves the tripartite balance, as two hundred years of constitutional commentary note. "Unless these [three branches of government] be so far connected and blended as to give to each a constitutional control over the others, the degree of separation which the maxim requires, as essential to a free government, can never in practice be duly maintained." *The Federalist* No. 48, at 308 (J. Madison) (Arlington House ed. 1966). This "constant check . . . preserv[ing] the mutual relations of one [branch] with the other . . . can be best accomplished, if not solely accomplished, by an occasional mixture of the powers

---

1. The earliest version of North Carolina's Constitution more realistically stated: "That the legislative, executive, and supreme judicial powers of government, *ought to be* forever separate and distinct from each other." (Emphasis added.) N.C. Const. Declaration of Rights § 4 (1776). *See* Mallard, *Inherent Power of the Courts of North Carolina*, 10 Wake Forest L. Rev. 1, 8 (1974).

## IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

of each department with that of the others, while the separate existence, and constitutional independence of each are fully provided for." 2 J. Story, *Commentaries on the Constitution of the United States* 22 (1833). A contemporary view notes that this area of overlap is occupied not only by the doctrine of checks and its basis in maintaining the province of each power, but also by a functional component of pragmatic necessity — termed by some commentators "incidental powers" — whereby one branch exercises some activities usually belonging to one of the other two branches in order to fully and properly discharge its duties. C. Baar, *Separate But Subservient — Court Budgeting in the American States* 155 (1975).

Like the jealous checks by one branch upon the encroachments of another, which the Framers viewed positively as the basis for government's critical balance, a functional overlap of powers should facilitate the tasks of each branch. "[C]hecks and balances and functional differentiation can be evaluated on the basis of how effectively they contribute to the operational goals [of each branch]." *Id.* at 152. No less important to a functional balance of power is the notion of a working reciprocity and cooperativeness amongst the branches:

> While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 96 L. Ed. 1153, 1199 (1952) (Jackson, J., concurring), quoted in *Matter of Salary of Juvenile Director*, 87 Wash. 2d 232, 243, 552 P.2d 163, 170 (1976).

In the realm of appropriations, some overlap of power between the legislative and the judicial branches is inevitable, for one branch is exclusively responsible for raising the funds that sustain the other and preserve its autonomy.[2] The danger this fiscal structure poses for the balance of power has long been recognized:

---

2. The North Carolina Constitution authorizes the General Assembly to prescribe and regulate the fees, salaries, and emoluments of all judicial officers. N.C. Const. art. IV, §§ 20, 21. The General Statutes provide that "operating expenses of the Judicial Department shall be paid from State funds, out of appropriations for this purpose made by the General Assembly," N.C.G.S. § 7A-300(a) (1989), and that

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

It is equally evident that the members of each department should be as little dependent as possible on those of the others for the emoluments annexed to their offices. Were the executive magistrate, or the judges, not independent of the legislature in this particular, their independence in every other would be merely nominal.

*The Federalist* No. 51, at 321 (J. Madison) (Arlington House ed.).

In order to preserve the independence of the judicial branch, courts in other states have exercised their inherent power even to seize purse strings otherwise held exclusively by the legislative branch, holding such intrusions justified by judicial self-preservation.[3] Typically, however, appellate courts have tempered language about broad inherent power endemic to the status of the judiciary as a co-equal branch of government with self-restraint regarding the reach into the public fisc.[4]

---

a portion of the costs of court collected by the clerk of court must be remitted, as "facilities fees," to the local legislative unit providing judicial facilities. N.C.G.S. § 7A-302 (1989).

3. *See, e.g., State v. Davis*, 26 Nev. 373, 68 P. 689 (1902) (courts have inherent power to bind the state to pay for furnishings out of appropriated funds; a view to the contrary would be to concede to the legislature the power of a hostile body to destroy the judicial department); *Woods v. State*, 233 Ind. 320, 119 N.E.2d 558 (1954) (a court has the right and duty to order appropriations for purposes of remodeling jury quarters where the autonomy of its branch is jeopardized by decrepit facilities because the judiciary is an independent and equal branch of the government with powers coequal with its duties); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (if the judiciary is in reality a coequal, independent branch of government, it possesses the inherent power not only to determine funds necessary for its own efficient and effective operation, but also, where funds are disallowed by the city council, to compel other branches to provide them). *See also O'Coins, Inc. v. Treasurer of County of Worcester*, 362 Mass. 507, 510, 287 N.E.2d 608, 612 (1972) ("We hold . . . that among the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel. To correct such an impairment, a judge may, even in the absence of a clearly applicable statute, obtain the required goods or services by appropriate means, including arranging himself for their purchase and ordering the responsible executive official to make payment.").

4. *E.g., Board of Com'rs v. Gwin*, 136 Ind. 562, 36 N.E. 237 (1893) (court's inherent power to order reconstruction arises out of and is restricted by absolute necessity; thus it was confined to repairs and other temporary means of protecting judicial functions); *State v. Pfeiffer*, 163 Ohio St. 149, 126 N.E.2d 57 (1955) (ordering ordinary facilities essential to the care and safeguarding of the free and untrammeled exercise of its functions was within the court's inherent power, but this does not apply merely in order to acquire more desirable space).

**IN RE ALAMANCE COUNTY COURT FACILITIES**

[329 N.C. 84 (1991)]

## III.

**[5, 6]**  We hold that when inaction by those exercising legislative authority threatens fiscally to undermine the integrity of the judiciary, a court may invoke its inherent power to do what is reasonably necessary for the "the orderly and efficient exercise of the administration of justice." *Beard v. N.C. State Bar*, 320 N.C. at 129, 357 S.E.2d at 696. Article V prohibits the judiciary from taking public monies without statutory authorization. But our statutes obligate counties and cities to provide physical facilities for the judicial system operating within their boundaries. N.C.G.S. § 7A-300(a)(11) (1989); N.C.G.S. § 7A-302 (1989). These facilities must be adequate to serve the functioning of the judiciary within the borders of those political subdivisions. Such adequacy necessarily includes safeguarding the constitutional rights of parties and ascertaining that parties' statutory rights — such as handicap access — are similarly protected. Although the statutes do not expressly pass the duty of providing adequate judicial facilities to the court in case of default of local authorities, the court has the inherent authority to direct local authorities to perform that duty.

**[7, 8]**  The only constraints on this power are constitutional. Even in the name of its inherent power, the judiciary may not arrogate a duty reserved by the constitution exclusively to another body, nor may it violate the constitutional rights of persons brought before its tribunals. Furthermore, doing what is "reasonably necessary for the proper administration of justice" means doing *no more* than is reasonably necessary. The court's exercise of its inherent power must be responsible — even cautious — and in the "spirit of mutual cooperation" among the three branches. *O'Coins, Inc. v. Treasurer of County of Worcester*, 362 Mass. at 515, 287 N.E.2d at 615, quoted in *Webster Cty. Bd. of Sup'rs v. Flattery*, 268 N.W.2d 869, 874 (Iowa 1978).[5]

> The very genius of our tripartite Government is based upon the proper exercise of their respective powers together

---

5. *See also, e.g., Gary City Court v. City of Gary*, 489 N.E.2d 511, 512-13 (Ind. 1986) (Funds sought through the exercise of mandate order must be necessary to maintain the court at a degree of efficiency to discharge its duties and neither extravagant, arbitrary nor unwarranted; presiding court must meet with the appropriate fiscal authorities before issuing a mandate order and must give due consideration to any adverse effect which the order would have on specific fiscal and other interests of the unit from which funds would come).

with harmonious cooperation between the three independent Branches. However, if this cooperation breaks down, the Judiciary must exercise its inherent power to preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed.

*Commonwealth ex rel. Carroll v. Tate*, 442 Pa. at 53, 274 A.2d at 197 (citations omitted). The inherent power of the court must be exercised with as much concern for its potential to usurp the powers of another branch as for the usurpation it is intended to correct. It is a *tool* to be utilized *only* where other means to rectify the threat to the judicial branch are unavailable or ineffectual, and its wielding must be no more forceful or invasive than the exigency of the circumstances requires.

> The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. . . . [Only w]hen [established] methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power.

*State v. Sullivan*, 48 Mont. 320, 329, 137 P. 392, 395 (1913), quoted in *Webster Cty. Bd. of Sup'rs v. Flattery*, 268 N.W.2d 869, 874-75; *O'Coins, Inc. v. Treasurer of County of Worcester*, 362 Mass. at 516, 287 N.E.2d at 615; *Judges for Third Judicial Cir. v. County of Wayne*, 383 Mich. 10, 42-43, 172 N.W.2d 436, 450 (1969) (separate opinion by Adams, J.), *cert. denied, County of Wayne v. Judges for Third Judicial Circuit*, 405 U.S. 923, 30 L. Ed. 2d 794 (1972); *Leahey v. Farrell*, 362 Pa. 52, 59, 66 A.2d 577, 580 (1949).

[9]  In exercising its power to do what is reasonably necessary for the proper administration of justice — in remedying the affront — a court must proceed with a cautious and cooperative spirit into those areas where its constitutional powers overlap with those of other branches. Beyond the definition of its powers imposed by the constitution, the court's judicious use of its inherent power to reach towards the public purse must recognize two critical limitations: first, it must bow to established procedural methods where these provide an alternative to the extraordinary exercise of its inherent power. Second, in the interests of the future harmony

**IN RE ALAMANCE COUNTY COURT FACILITIES**

[329 N.C. 84 (1991)]

of the branches, the court in exercising that power must minimize the encroachment upon those with legislative authority in appearance and in fact. This includes not only recognizing any explicit, constitutional rights and duties belonging uniquely to the other branch, but also seeking the least intrusive remedy.

[10] Obeisance to established procedural methods includes a respect for statutory remedies and constraints when these do not stand in the way of obtaining what is reasonably necessary for the proper administration of justice.[6] The superior court order before us noted that the failure of Alamance County to provide adequate court-related facilities violated statutory provisions requiring counties in which a district court has been established to provide "courtrooms and related judicial facilities (including furniture)." N.C.G.S. § 7A-302 (1989). The General Statutes provide a single remedy for this violation: the willful failure of a county commissioner to discharge the duties of his office is punishable as a misdemeanor, N.C.G.S. § 14-230 (1989). The inefficacy of this remedy is made apparent by reviewing the jurisprudence of this state arising under similar circumstances.

At the turn of this century, a number of cases presented the dilemma of challenges to commissioners in whose counties public facilities were in need of construction or repair. Repeatedly, this Court's response was to state that the court was neither empowered to assume the commissioners' duty and direct such action, nor to force the commissioners to act. This Court's reluctance to intervene sprang from its impracticable perception of the absoluteness of the separation of powers doctrine. "This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the Government or upon the county authorities." *Broadnax v. Groom*, 64 N.C. 244, 250 (1870). The two solutions proposed by this Court to commissioner recalcitrance were nonremedial. First,

---

6. *See, e.g., Committee, Marion Co. Bar Ass'n v. County of Marion*, 162 Ohio St. 345, 123 N.E.2d 521 (1954) (inherent power to require the furnishing of reasonable improvements that might be necessary to carry on important judicial functions did not include the installation of an elevator, particularly where statutes plainly provided that commissioners were permitted to consult their judgment as to whether and what kind of courthouse was needed); *Pena v. District Court of Second Jud. Dist.*, 681 P.2d 953 (Colo. 1984) (specific statute and administrative rules predicated that only the state supreme court through the chief judges of each district had the power to order such remodeling as air-conditioning).

there was the ballot box: "For the exercise of powers conferred by the Constitution, the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties." *Satterthwaite v. Commrs.*, 76 N.C. 153 (1877). Second, commissioners could be indicted for neglecting their statutory duty to erect and keep facilities in repair. *See State v. Leeper*, 146 N.C. 655, 61 S.E. 585 (1908). Means of compelling county commissioners to remedy inadequate court facilities *immediately* were absent, however, for although "the cost of a courthouse is a necessary expense to a county, ... the exercise of the discretionary authority of the commissioners in providing in this case to meet it is not reviewable by the courts." *Vaughn v. Commissioners*, 117 N.C. 429, 435-36, 23 S.E. 354, 355 (1895). *See also Ward v. Commissioners*, 146 N.C. 534, 60 S.E. 418 (1908) (Mandamus will not lie to compel county commissioners to repair or build a courthouse because matter is discretionary; court can intervene only to punish for criminal abuse of duty); *Glenn v. Commissioners*, 139 N.C. 412, 52 S.E. 58 (1905) (Mandamus cannot issue commanding county commissioners to repair a bridge).

[11]  In *Hickory v. Catawba County and School District v. Catawba County*, 206 N.C. 165, 173 S.E. 56 (1934), this Court held that remedy by indictment of commissioners remiss in their constitutional duty to provide for the maintenance of public schools in their county could not supersede remedy by mandamus: "a party must not only have an adequate legal remedy but one competent to afford relief on the particular subject-matter of his complaint. Punishment of the defendants would not provide the relief to which the plaintiffs are entitled." *Id.* at 174, 173 S.E. at 61. Similarly, this Court declared indictment inadequate but said mandamus would lie to compel the county, acting as an administrative agency of the legislature, to assume the indebtedness of a school district within its jurisdiction. *School District v. Alamance County*, 211 N.C. 213, 189 S.E. 873 (1937). These school district cases implicitly overruled holdings in the earlier cases that restricted remedies under similar circumstances to elections and indictment; we now reverse those earlier holdings explicitly.

The question remaining regarding the issue of the court's exercise of its inherent power is whether the remedy selected by the

## IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

Superior Court—an *ex parte*[7] order commanding county commissioners immediately to "take steps" to ameliorate certain judicial facilities—minimized the encroachment. Under the circumstances, was an *ex parte* order implicitly mandating the expenditure of public funds for judicial facilities "reasonably necessary for the proper administration of justice?"

Courts in other jurisdictions have attempted a panoply of remedial measures in exercising their inherent powers to compel the repair, refurbishing, or construction of court facilities by county commissioners. *Ex parte* orders like that before us mandating the appropriations for necessary court items or space occasionally have been approved on review.[8] Commentators have noted, however, that *ex parte* orders, like contempt proceedings, tend to appear arbitrary. J. Cratsley, *Inherent Power of the Courts* 27 (1980). *See also Matter of Salary of Juvenile Director*, 87 Wash. 2d at 249, 552 P.2d at 173 ("By in effect initiating and trying its own lawsuits, the judiciary's image of impartiality and the concomitant willingness of the public to accept its decisions as those of a fair and disinterested tribunal may be severely damaged."). The one-sided nature of both methods, in addition, bespeaks an arrogance that can further erode relations between the judiciary and those exercising legislative authority. This is particularly true of contempt proceedings, whose use under these circumstances has been careful and rare.[9] In appropriate situations, appellate courts have

---

7. By definition, *ex parte* orders are made without notice to or contestation by the party adversely interested, Black's Law Dictionary 517 (rev. 5th ed. 1979). The Alamance County Commissioners were served with notice of the hearing and informed of their right to participate, but they were neither named nor recognized as parties to the proceeding. In their one-sided nature, therefore, both the hearing and the resulting order were *ex parte*.

8. *E.g., Knuepfer v. Fawell*, 96 Ill. 2d 284, 449 N.E.2d 1312 (1983) (appropriation and remodeling of courtroom space where exigent circumstances clearly established); *State, etc. v. Superior Court of Marion Cty., Rm. No. 1.*, 264 Ind. 313, 316, 344 N.E.2d 61, 63 (1976) (issued under the authority of state statute assuring trial on the merits upon petition by affected officer); *Gary City Court v. City of Gary*, 489 N.E.2d 511 (city court has inherent power to issue mandate, but preferable to file independent action for mandate against municipal authorities in trial court of general jurisdiction). *But see Webster Cty. Bd. of Sup'rs v. Flattery*, 268 N.W.2d at 876 (better practice to make detailed fact-finding and proposed order, filed with show cause order, served with notice of hearing on those affected).

9. *See, e.g., In re Board of Commissioners*, 4 N.C. App. 626, 167 S.E.2d 488 (1969) (order concluding that commissioners' refusal to comply with prior order directing them to provide "adequate" court facilities was contemptuous conduct

also sanctioned contract actions brought by suppliers against municipal or county officials. *E.g., Schmelzel v. Board of Com'rs.,* 16 Idaho 32, 100 P. 106 (1909). In addition, mandatory injunctions and writs of mandamus have been issued ordering officials to perform their constitutional or statutory duties. *See generally* J. Cratsley, *Inherent Power of the Courts* 26-28 (1980).

[12] Of all these remedies, the writ of mandamus has been the favored approach. *See, e.g., O'Coins, Inc. v. Treasurer of County of Worcester,* 362 Mass. at 517, 287 N.E.2d at 616 (enforcement by mandamus brought against county by supplier of tape recorder purchased by court as expense deemed reasonably necessary for the operation of the court preferable to contract action, petition in equity, or to *ex parte* order for payment of obligation so incurred). *See generally* Annot. "Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes," 59 A.L.R.3d § 2[b] 579 (1974). Mandamus is the proper remedy to compel public officials to perform a purely ministerial duty imposed by law; it generally may not be invoked to review or control the acts of public officers respecting discretionary matters. *Hospital v. Joint Committee,* 234 N.C. 673, 680, 68 S.E.2d 862, 867 (1952). However, mandamus will lie to review discretionary acts when the discretion appears to have been abused or the action taken arbitrarily, capriciously, or in disregard of law. *Ponder v. Joslin,* 262 N.C. 496, 138 S.E.2d 143 (1964); *Pue v. Hood,* 222 N.C. 310, 22 S.E.2d 896 (1942).

[13] The means chosen by a court to compel county commissioners to furnish suitable court facilities is of critical importance to the question whether the court has unreasonably exercised its inherent power, for it signals the extent of the judiciary's intrusion on the county's legislative authority. The efficacy of mandatory writs or injunctions, unlike *ex parte* orders and contempt proceedings, rests less on the expansive exercise of judicial power than on the statutory and constitutional duties of those against whom they are issued. Their use thus avoids to some extent the arrogance of power more palpable in an *ex parte* court order. Moreover, they compel the performance of the ministerial duty imposed by law, but give the

was without effect because commissioners not advised they were to appear and show cause why they should not be held in contempt). *See also In re Norris,* 154 Ga. App. 173, 267 S.E.2d 788 (1980) (finding of contempt reversed because record did not evidence any disrespect by commissioners toward the superior court).

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

defaulting officials room to exercise discretionary decisions regarding how that duty may best be fulfilled. *See Orange County v. Dept. of Transportation,* 46 N.C. App. 350, 386, 265 S.E.2d 890, 913, *disc. rev. denied,* 301 N.C. 94 (1980) (public officers may have both ministerial and discretionary duties).

[14, 15] Counties in which a district court has been established have an absolute statutory duty to provide judicial facilities. N.C.G.S. § 7A-302 (1989). In cities other than county seats where sessions of superior court are held, boards of commissioners are obligated by statute to provide "suitable" places for holding such sessions of court. N.C.G.S. § 7A-42(h) (1989). Such duties are ministerial in all but the details of their exercise—the commissioners' interpretation of what is "suitable," or adequate. In matters involving the exercise of discretion, mandamus will lie only to compel public officials to take action; ordinarily it will not require them to act in any particular way. *Hospital v. Joint Committee,* 234 N.C. at 680, 68 S.E.2d at 868. When an officer has failed to exercise his ministerial duty—under the facts of this case, to provide "adequate" court facilities—or when he has exercised his discretion in disregard of the law, the writ of mandamus may be employed to obtain an effective, timely remedy.

In *Vaughn v. Commissioners,* 117 N.C. 429, 23 S.E. 354 (1895), this Court was faced with the propriety of the trial court's refusal to enjoin commissioners from choosing one means of financing court facilities over another. Approval of the trial court's decision was couched strictly in terms of the separation of powers.

> It is absolutely essential to the administration of justice that a suitable courthouse and jail should be built at every county site in the State. It is within the province of the courts to determine what are necessary public buildings and what classes of expenditures fall within the definition of the necessary expenses of a municipal corporation. But, conceding as we do that the cost of erecting courthouses and jails, like that of building bridges and of constructing public roads, is one of the necessary expenses of a county, we have no authority vested in the commissioners of determining what kind of a courthouse is needed or what would be a reasonable limit to the cost.

*Id.* at 434, 23 S.E. at 355. It is as true today as it was a century ago that a court "has no authority vested in the commissioners"

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

either to perform their statutory duty of providing suitable court facilities or to exercise the discretionary choices within that duty. However, when it is reasonably necessary for the administration of justice, the court can exercise its inherent power to *compel* the commissioners to do both.

> [A] court of competent jurisdiction may determine in a proper proceeding whether a public official has acted capriciously or arbitrarily or in bad faith or in disregard of the law. And it may compel action in good faith in accord with the law. But when the jurisdiction of a court is properly invoked to review the action of a public official to determine whether he, in choosing one of two or more courses of action, abused his discretion, the court may not direct any particular course of action. It only decides whether the action of the public official was contrary to law or so patently in bad faith as to evidence arbitrary abuse of his right of choice. If the officer acted within the law and in good faith in the exercise of his best judgment, the court must decline to interfere even though it is convinced the official chose the wrong course of action. The right to err is one of the rights—and perhaps one of the weaknesses—of our democratic form of government.

*Burton v. Reidsville*, 243 N.C. 405, 407, 90 S.E.2d 700, 702-03 (1956) (citations omitted).

[16]  Based upon its abundant findings of fact regarding the financial status of county coffers, the superior court order *sub judice* concluded that the County of Alamance was "financially able to provide courtrooms and judicial facilities." The order stopped short of ordering the commissioners to release funds for those purposes and of thus leaving the constitutional sphere of its inherent powers. Nevertheless, in form and in substance the order's attempted remedy went beyond requiring the Alamance County Commissioners to do their constitutional and statutory duty to provide court facilities. The *ex parte* nature of the order overreached the minimal encroachment onto the powers of the legislative branch that must mark a court's judicious use of its inherent power, and the order's dictate regarding the precise location and specific minimum dimensions of what constituted "adequate" court facilities improperly divested the commissioners of discretionary decisions within their statutory duty. A more reasonable, less intrusive procedure would have been for the court, in the exercise of its inherent power, to summon

IN RE ALAMANCE COUNTY COURT FACILITIES

[329 N.C. 84 (1991)]

the commissioners under an order to show cause why a writ of mandamus should not issue, which order would call attention to their statutory duty and their apparent failure to perform that duty. If after hearing it was determined that the commissioners had indeed failed to perform their duty, as the court determined in the case before us, the court could order the commissioners to respond with a plan — perhaps in consultation with such judicial personnel as the senior resident superior court judge, the chief district court judge, the district attorney, the clerk, or other judicial officials with administrative authority — to submit to the court within a reasonable time. Such a directive would be a judicious use of the court's inherent power without either seizing the unexercised discretion of a political subdivision of the legislative branch or obtruding into the constitutional hegemony of that branch.

We hold that the order *sub judice* exceeded what was reasonably necessary to the administration of justice under the circumstances of this case, and in so doing strained at the rational limits of the court's inherent power.

## IV.

[17] By virtue of their being "a co-ordinate department of the government," N.C. Const. art IV, § 1, courts of this state are empowered "to issue in personam orders requiring public officials to act in compliance with their . . . public duties." *Orange County v. Dept. of Transportation*, 46 N.C. App. at 385, 265 S.E.2d at 913. No procedure or practice of the courts, however, even those exercised pursuant to their inherent powers, may abridge a person's substantive rights. *See* N.C. Const. art. IV, § 13(2). *See also Lowder v. Mills, Inc.*, 301 N.C. 561, 583, 273 S.E.2d 247, 260 (1980) (right to confront witnesses applicable to contempt proceedings); *Cotton Mills v. Local 578*, 251 N.C. 218, 228, 111 S.E.2d 457, 463 (1959) (law of the land guarantees one charged with contempt of court to confront and cross-examine witnesses), *cert. denied, Rose v. Harriett Cotton Mills*, 362 U.S. 941, 4 L. Ed. 2d 770 (1960).

[18] The commissioners were served with notice of the hearing and informed of their rights to be represented by an attorney and to present evidence. In response to motions filed by the commissioners, however, the court stated that the movants lacked standing, as they were not parties to the action. "[I]n order that there be a valid adjudication of a party's rights, the latter must be given

notice of the action and an opportunity to assert his defense, and he *must be a party to such proceeding." In re Wilson*, 13 N.C. App. 151, 153, 185 S.E.2d 323, 325 (1971) (emphasis added) (quoting 2 Strong's N.C. Index 2d, *Constitutional Law* § 24). "[A]ny judgment which may be rendered in . . . [an] action will be wholly ineffectual as against [one] who is not a party to such action." *Scott v. Jordan*, 235 N.C. 244, 249, 69 S.E.2d 557, 561 (1952). The exercise of the court's inherent power to do what is reasonably necessary for the proper administration of justice must stop where constitutional guarantees of justice and fair play begin. "The law of the land clause . . . guarantees to the litigant in every kind of judicial proceeding the right to an adequate and fair hearing before he can be deprived of his claim or defense by judicial decree." *In re Custody of Gupton*, 238 N.C. 303, 304, 77 S.E.2d 716, 717 (1953). "The instant that the court perceives that it is exercising, or is about to exercise, a forbidden or ungranted power, it ought to stay its action, and, if it does not, such action is, in law, a nullity." *Burroughs v. McNeill*, 22 N.C. at 301. Such was the effect of the superior court order here.

Because the commissioners were not parties to the action from which the order issued, they are not bound by its mandates. Having so held, this Court need not address additional issues raised by petitioners.

We hold the order below, for all the reasons given, must be, and is

Vacated.