DIETZ, Judge.
 

 *423
 
 The State Treasurer, State Controller, and various other officials appeal from the trial court's order and writ of mandamus commanding them to pay money from the State treasury to satisfy a court judgment against the State.
 

 If this were any other case, we would summarily reverse. Under the Separation of Powers Clause in our State constitution, no court has the power to order the legislature to appropriate funds or to order the executive branch to pay out money that has not been appropriated.
 

 But this case is more complicated because it, too, arises under our State constitution. The Richmond County Board of Education brought a claim against the State alleging that fees collected for certain criminal offenses, and used to fund county jail programs, should have been given to the schools instead. The school board relied on Article IX, Section 7 of our State constitution, which provides that "all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully
 
 *30
 
 appropriated and used exclusively for maintaining free public schools."
 

 After a series of appeals to this Court, the school board ultimately prevailed on its constitutional claim. This Court ordered that all fees collected and sent to the jail program must be "paid back" to the clerks of superior court in the respective counties, to then be sent to the county schools.
 
 Richmond Cty. Bd. of Educ. v. Cowell
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 244
 
 , 249 (2015).
 

 That never happened-apparently because the Richmond County Board of Education never secured an injunction to stop the program while this case made its way through the courts, and now the money has been spent. Moreover, the General Assembly, to date, has not appropriated any new money to pay the Richmond County schools (or any other county schools) what they are owed.
 

 After time passed and the Richmond County schools never got paid, the school board returned to the trial court and secured the order and
 
 *424
 
 writ of mandamus on appeal here, which commands various state officials to immediately pay the judgment out of the State treasury or risk being thrown in jail.
 

 As explained below, we reverse the trial court's order. Under long-standing precedent from our Supreme Court, the judicial branch cannot order the State to pay new money from the treasury to satisfy this judgment. To be sure, if the school board had sought and obtained an injunction to stop the county jail program from using the money, courts might have the power to order the existing money returned. But that is not what happened here. The fees collected through the program are gone-spent to assist the counties in funding their local jails.
 

 Of course, this does not mean the Richmond County schools cannot get their money. As our Supreme Court explained in a similar case, having entered a money judgment against the State, the judiciary has "performed its function to the limit of its constitutional powers."
 
 Smith v. State
 
 ,
 
 289 N.C. 303
 
 , 321,
 
 222 S.E.2d 412
 
 , 424 (1976). From here, satisfaction of that money judgment "will depend upon the manner in which the General Assembly discharges its constitutional duties."
 

 Id.
 

 Facts and Procedural History
 

 On 16 February 2012, the Richmond County Board of Education sued various State officials challenging the constitutionality of a now-repealed version of N.C. Gen. Stat. § 7A-304(a)(4b). The statute required the State to collect a $50 fee from defendants convicted of improper equipment offenses and to remit the $50 fee to the Statewide Misdemeanant Confinement Fund, which helps counties pay the cost of housing criminal offenders in county jails, rather than in State prisons. The school board argued that the statute violated Article IX, Section 7 of the North Carolina Constitution, which states that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools." N.C. Const. art. IX, § 7 (a).
 

 After a side trip to this Court on the issue of sovereign immunity,
 
 Richmond Cty. Bd. of Educ. v. Cowell
 
 ,
 
 225 N.C.App. 583
 
 ,
 
 739 S.E.2d 566
 
 ,
 
 rev. denied
 
 ,
 
 367 N.C. 215
 
 ,
 
 747 S.E.2d 553
 
 (2013), the trial court granted summary judgment in the school board's favor.
 

 On appeal from the trial court's judgment, this Court affirmed, holding that "the remittance of the $50.00 surcharges collected in
 
 *425
 
 Richmond County to the State Confinement Fund is unconstitutional" and "it is appropriate-as the trial court ordered-that this money be paid back to the clerk's office in Richmond County" to then be paid to the school system as the State constitution requires.
 
 Richmond Cty. Bd. of Educ. v. Cowell
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 244
 
 , 249 (2015). Neither side sought further review of this Court's decision in our Supreme Court. On remand, the trial court followed this Court's mandate and entered a judgment ordering the State to pay the Richmond County school system the $272,300.00 it is owed.
 

 Time passed but the Richmond County schools never got the money. Apparently, the State was unable to "pay back" the funds collected from the $50 fees, as this Court had ruled, because the money already had been spent on the county jail program. Thus, without a new appropriation from the General Assembly, there were no funds available to satisfy the judgment.
 

 The school board ultimately returned to the trial court and sought an order directing various State officials to appear and show cause why they had not complied with the trial court's judgment. The court initially denied the school board's request without prejudice, noting that "Plaintiff's Motion for Show Cause Order raises significant issues concerning appropriation of state funds, matters of collectability, and separation of powers." The trial court also observed that a legislative session was set to begin, at which point the General Assembly could appropriate funds to pay the judgment.
 

 That didn't happen. The General Assembly concluded its legislative session without appropriating any funds to satisfy the judgment. On 1 September 2016, the Richmond County Board of Education returned to the trial court seeking an order to compel various State officials to pay $272,300.00 out of the State treasury to satisfy the trial court's judgment. The trial court granted the school board's motion and issued a writ of mandamus ordering the State Treasurer, State Controller, and State Attorney General to take the necessary steps to pay the judgment using funds from the State treasury. This appeal followed.
 

 Analysis
 

 Among the most important rights guaranteed in the North Carolina Constitution is the Separation of Powers, which ensures that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. The Framers of our constitution included this provision
 
 *426
 
 in the Declaration of Rights to prevent the concentration of power in any one branch of our government. By reserving certain powers exclusively to one of the three branches, our government has an inherent set of checks and balances, which the Framers believed was essential to preserve liberty and prevent tyranny.
 
 See
 

 State v. Berger
 
 ,
 
 368 N.C. 633
 
 , 645,
 
 781 S.E.2d 248
 
 , 256 (2016). This is not a controversial concept. As our Supreme Court once observed, "[a]s to the wisdom of this provision there is practically no divergence of opinion-it is the rock upon which rests the fabric of our government."
 
 Person v. Board of State Tax Comm'rs
 
 ,
 
 184 N.C. 499
 
 , 502,
 
 115 S.E. 336
 
 , 339 (1922).
 

 Although most Separation of Powers cases (in modern times, at least) involve clashes between the legislative and executive branches, in many ways the judicial branch poses the greatest risk to the doctrine. This is so because the courts have an inherent power "to do all things that are reasonably necessary for the proper administration of justice."
 
 In re Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. 84
 
 , 94,
 
 405 S.E.2d 125
 
 , 129 (1991). To accomplish this task, courts possess the power to issue injunctions and extraordinary writs, like the writ of mandamus issued in this case. If the public officials targeted by these injunctions and writs ignore them, those officials can be held in
 
 *31
 
 contempt and put in jail. Left unchecked, this power would permit judges to freely organize and execute State power as they see fit.
 

 To restrain this far-reaching power, our Supreme Court repeatedly has acknowledged that "[e]ven in the name of its inherent power, the judiciary may not arrogate a duty reserved by the constitution exclusively to another body."
 
 Id.
 
 at 99,
 
 405 S.E.2d at 132
 
 . In other words, the Separation of Powers doctrine prohibits the courts from using the judicial power to step into the shoes of the other branches of government. The courts can declare a statute unconstitutional, for example, but cannot draft a new one or order the legislature to do so.
 
 Person
 
 ,
 
 184 N.C. at 503
 
 ,
 
 115 S.E. at 339
 
 .
 

 Unsurprisingly, fights over the reach of judicial power often arise in the context of the State treasury. After all, courts expect that when they enter valid money judgments against the State, the State will respect those judgments. But, when that fails, the Separation of Powers clause prevents the judicial branch from reaching into the public purse on its own. Appropriating money from the State treasury is a power vested exclusively in the legislative branch and "[n]o money shall be drawn from the State treasury but in consequence of appropriations made by law." N.C. Const. art. V, § 7 ;
 
 see also
 

 *427
 

 Advisory Opinion In re Separation of Powers
 
 ,
 
 305 N.C. 767
 
 , 777,
 
 295 S.E.2d 589
 
 , 595 (1982). Because the State constitution vests the authority to appropriate money solely in the legislative branch, the Separation of Powers Clause "prohibits the judiciary from taking public monies without statutory authorization."
 
 Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. at 99
 
 ,
 
 405 S.E.2d at 132
 
 .
 
 [1]
 

 Our Supreme Court described how these Separation of Powers principles apply in
 
 Smith v. State
 
 ,
 
 289 N.C. 303
 
 , 321,
 
 222 S.E.2d 412
 
 , 424 (1976). In
 
 Smith
 
 , the Supreme Court held that when the State contracts with a private citizen, it cannot invoke sovereign immunity to defeat an action alleging that the State breached that contract. The Court likewise reaffirmed the power of the judicial branch to enter a money judgment against the State. But the Court also cautioned that the power of the judicial branch ends with the entry of that judgment:
 

 In the event that plaintiff is successful in establishing his claim against the State, he cannot, of course, obtain execution to enforce the judgment. The validity of his claim, however, will have been judicially ascertained. The judiciary will have performed its function to the limit of its constitutional powers. Satisfaction will depend upon the manner in which the General Assembly discharges its constitutional duties.
 

 Id.
 

 (citations omitted).
 

 Thus, when the courts enter a judgment against the State, and no funds already are available to satisfy that judgment, the judicial branch has no power to order State officials to draw money from the State treasury to satisfy it.
 

 Of course, this case is no mere contract dispute. The State violated the North Carolina Constitution when it moved money otherwise destined for the Richmond County schools to a separate State fund to pay for county jail programs throughout the State.
 
 Richmond Cty. Bd. of Educ. v. Cowell
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 244
 
 , 249 (2015). As a result, this Court held that "it is appropriate-as the trial court ordered-that this money be paid back to the clerk's office in Richmond County."
 

 Id.
 

 It was well within the judicial branch's power to order this money-taken from Richmond County in violation of the constitution-to be
 
 *428
 
 returned. This, in turn, means that if the money collected from these fines still rested within the Statewide Misdemeanant Confinement Fund, awaiting the outcome of this protracted litigation, the courts could order State officials to return the money to Richmond County and the other affected counties.
 

 But, as the parties concede, this cannot be done because the money is gone. The Richmond County Board of Education did not obtain a preliminary injunction to prevent the State from spending the money while it
 
 *32
 
 litigated the case (and the record on appeal contains no indication that the school board even sought an injunction). As a result, the only way the State can satisfy the judgment entered by the trial court is to pay
 
 new
 
 money from the State treasury-money not obtained from the improper equipment fees, but from the taxpayers and other sources of general State revenue. Under
 
 Smith
 
 , the judicial branch lacks the power to order State officials to pay this new money from the treasury.
 
 289 N.C. at 321
 
 ,
 
 222 S.E.2d at 424
 
 .
 

 The school board also contends that, even without a specific appropriation from the General Assembly, there are ways for State officials to find money to pay the judgment. For example, the school board points to the Contingency and Emergency Fund established in N.C. Gen. Stat. § 143C-4-4. By law, that fund may be used for "expenditures required ... by a court." N.C. Gen. Stat. § 143C-4-4. The school board argues that the trial court's writ of mandamus can be interpreted not as an order to pay out funds that were not appropriated, but instead as an order that State officials take whatever steps are necessary to pay the judgment from any discretionary sources that are available.
 

 We must reject this argument because a writ of mandamus may be used only to command public officials "to perform a purely ministerial duty imposed by law; it generally may not be invoked to review or control the acts of public officers respecting discretionary matters."
 
 Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. at 104
 
 ,
 
 405 S.E.2d at 135
 
 . It is hard to imagine a more discretionary process than the one required to obtain emergency funds-a process that permits State agencies to request the funds, then permits the Governor to decide whether to approve that request, and then calls for the Council of State to review the agency's request and the Governor's recommendation, and to vote on whether to approve it. N.C. Gen. Stat. § 143C-4-4.
 
 [2]
 

 *429
 
 Moreover, commanding members of the Council of State and other executive branch officials to approve payment from this type of discretionary emergency fund is no less offensive to the Separation of Powers Clause than commanding the legislature to appropriate the money.
 
 See
 

 Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. at 100
 
 ,
 
 405 S.E.2d at 133
 
 . The Contingency and Emergency fund, as its name suggests, was created to fund "contingencies and emergencies" for which no separate appropriation exists but which must be addressed before the General Assembly convenes to appropriate new funds. Determining what constitutes an emergency worthy of this special fund is a task for which executive branch officials are uniquely suited. The judiciary "has no power, and is not capable if it had the power" of substituting its own judgment for that of the executive branch officials charged with making these discretionary decisions.
 
 Id.
 
 at 101,
 
 405 S.E.2d at 134
 
 .
 

 In sum, the role of the courts in this constitutional dispute is over. As the Framers of our constitution intended, the judiciary "performed its function to the limit of its constitutional powers" by entering a judgment against the State and in favor of the Richmond County Board of Education.
 
 Smith
 
 ,
 
 289 N.C. at 321
 
 ,
 
 222 S.E.2d at 424
 
 . The State must honor that judgment. But it is now up to the legislative and executive branches, in the discharge of their constitutional duties, to do so. The Separation of Powers Clause prevents the courts from stepping into the shoes of the other branches of government and assuming their constitutional duties. We have pronounced our judgment. If the other branches of government still ignore it, the remedy lies not with the courts, but at the ballot box.
 

 Conclusion
 

 For the reasons discussed above, we reverse the trial court's order and writ of mandamus.
 

 REVERSED.
 

 Judges ELMORE and ARROWOOD concur.
 

 [1]
 

 The only exception to this rule is when the legislative branch refuses to fund the judicial branch to such an extreme extent that the judiciary cannot perform its own constitutional duties.
 
 Alamance Cty. Court Facilities
 
 ,
 
 329 N.C. at 99
 
 ,
 
 405 S.E.2d at 132
 
 .
 

 [2]
 

 In addition, although portions of the trial court's order refer to all defendants in the suit, the writ of mandamus is directed only at the State Treasurer, State Controller, and State Attorney General, not at the other officials involved in this process.