IN THE SUPREME COURT OF NORTH CAROLINA

No. 206PA21
No. 410PA18-2

Filed 22 August 2025

TOWN OF APEX

v.

BEVERLY L. RUBIN

Consolidated cases on discretionary review pursuant to N.C.G.S. § 7A-31 of the unanimous decisions of the Court of Appeals, 277 N.C. App. 328 (2021), and 277 N.C. App. 357 (2021). In the first decision, the Court of Appeals vacated in part, affirmed in part, and reversed in part an order entered in file no. 15-CVS-5836 on 21 January 2020 by Judge G. Bryan Collins in Superior Court, Wake County. In the second decision, the Court of Appeals reversed in part, vacated in part, and affirmed in part an interlocutory order entered in file no. 19-CVS-6295 also on 21 January 2020 by Judge G. Bryan Collins in Superior Court, Wake County and remanded. Heard in the Supreme Court on 24 September 2024.

*David P. Ferrell & George T. Smith III for plaintiff-appellant.*

*Fox Rothschild LLP, by Matthew Nis Leerberg; and Howard, Stallings, From, Atkins, Angell, & Davis, P.A., by Kenneth Haywood & B. Joan Davis, for defendant-appellee.*

*R. Susanne Todd and Shiloh Daum for North Carolina Advocates for Justice, amicus curiae.*

*Erin E. Wilcox for Pacific Legal Foundation, amicus curiae.*

*Sever-Storey, LLP, by Shiloh Daum, for North Carolina Advocates for Justice, amicus curiae.*

RIGGS, Justice.

The North Carolina Constitution only allows the taking of private property by eminent domain if the taking is for public use and the landowner receives just compensation for the taking. *See* N.C. Const. art. I, § 19. The North Carolina General Assembly has given municipalities this power of eminent domain with the caveat that the power "may not be employed to take private property for a purely private purpose." *Carolina Tel. & Tel. Co. v. McLeod*, 321 N.C. 426, 429 (1988); *see also* N.C.G.S. § 40A-3 (2023).

We are asked if a trial court determines that a municipality's exercise of eminent domain was for a private purpose, rather than a public purpose, does title and right of possession revest with the original landowner? We hold it does. After all, deciding otherwise would render the Takings Clause meaningless. And if the municipality has already completed construction on the taken land, our courts possess the inherent authority to restore the land to its pre-construction status by issuing a mandatory injunction. Whether such an injunction issues depends on a weighing of the "equities, hardships, and the interests of the public and of third persons," and that weighing rests within the province of a trial court. *Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 399 (1996). Thus, as to *Town of Apex v. Rubin (Apex II)*, 277 N.C. App. 328 (2021), we affirm in part and reverse in part the

Court of Appeals' decision and remand for the trial court to determine a remedy for Apex's continuing trespass. As to *Town of Apex v. Rubin (Apex III)*, 277 N.C. App. 357 (2021), we vacate the Court of Appeals' decision and remand with instructions for further remand to the trial court to dismiss the 2019 action with prejudice.

## I.    Factual Background

The Town of Apex is a growing town located in Wake County, North Carolina. In 2010, defendant Beverly L. Rubin purchased land on Olive Chapel Road in a rural, unincorporated section of Wake County adjacent to Apex.[1]  When she purchased the property, Ms. Rubin's lot abutted several largely undeveloped tracts named after their respective owners: the Ball, Evans, Park, Eatman and Walden tracts. The Ball, Evans, and Park tracts established the eastern perimeter of Ms. Rubin's land. The Eatman track was located next to Ms. Rubin's property on the west and the Walden tract bordered the south perimeter. Neither Ms. Rubin's land nor the adjacent tracts were originally within Apex's town limits.

In 2012, a private real estate developer, Bradley Zadell, began acquiring the land surrounding Ms. Rubin's property. First, Mr. Zadell purchased the Park tract in November 2012. Mr. Zadell applied to have the Park property annexed by the town of Apex and rezoned to increase the number of homes that could be built on the land. Apex approved the annexation and rezoning even though no town sewer lines served

---

[1] Although unrelated to this matter, in March 2012, Apex exercised eminent domain to acquire a water utility easement along the northern tip of Ms. Rubin's property.

the property. In 2013, Mr. Zadell purchased the adjacent Evans tract which also did not have sewer service. Mr. Zadell then applied to have this tract annexed and rezoned. Apex also approved that application. Mr. Zadell combined the tracts into a subdivision named Riley's Pond.

In May 2014, Mr. Zadell purchased the Eatman tract to the west of Ms. Rubin's property and named the property Arcadia West. Arcadia West was the only parcel connected to the town sewer system. The town sewer line runs along the south edge of Arcadia West.

To develop Riley's Pond, Mr. Zadell needed sewer service for the property. The record indicates he had three options to address this need. First, he could install a pump station on the property and a pumped sanitary line running north to Olive Chapel Road, and he could then connect the pumped sewer line to the sewer lines on his Arcadia West property. Second, he could purchase an easement across the Ball and Walden tracks, allowing him to install a gravity sewer line that connected to the town sanitary line south of Riley's Pond on the Walden track. Third, he could purchase an easement across Ms. Rubin's property to run a gravity sanitary line to connect to the sanitary line on the Acadia West property.

Mr. Zadell approached Ms. Rubin with a proposal to purchase an easement across her land for the sanitary line. Ms. Rubin declined the offer. The owners of the Ball tract also declined to sell Mr. Zadell a sewer easement across their land.

Mr. Zadell then approached the mayor and public works director for Apex in August 2014, asking the Town Council to exercise eminent domain power to install a sewer line across Ms. Rubin's property. Mr. Zadell asserted that the easement was the "only way to make a connection."

In a March 2015 meeting, the Town Council considered and approved by 3-2 vote—over Ms. Rubin's objection—a resolution authorizing an eminent domain proceeding to take a forty-foot-wide sewer easement across Ms. Rubin's property. Prior to the Town Council meeting, Mr. Zadell executed a contract with Apex where Mr. Zadell agreed "to pay the Town's costs, including attorneys' fees, of the [c]ondemnation [a]ction[ ]." Mr. Zadell also agreed to indemnify Apex for, *inter alia*, any judgments, claims, damages, or attorneys' fees arising out of the condemnation action. In February 2015, Mr. Zadell executed a contract to sell Riley's Pond for a profit of nearly $2.5 million; the sale was conditioned upon Apex securing the sewer line easement across Ms. Rubin's property by condemnation.

On 27 July 2015, Apex installed the underground sewer line across Ms. Rubin's property. The Town used a boring method to install the pipe, meaning it drilled an underground opening for the sewer line working from the property adjacent to Ms. Rubin's land. The Town then slid 156 feet of eight-inch diameter sewer piping encased in an eighteen-inch steel enclosure across Ms. Rubin's property, eighteen feet underground. The construction method avoided the appearance of construction activity on Ms. Rubin's property.

## II.     Procedural History

### A. Trial Court Proceedings Before Judge O'Neal

Before Apex installed the sewer line on Ms. Rubin's property, it initiated a direct condemnation action in Wake County Superior Court on 20 April 2015 (Direct Condemnation Action). Following the procedure outlined in N.C.G.S. § 136-103, Apex filed a complaint and declaration and deposited the estimated compensation of $10,771.00 with the Clerk of Superior Court.

Ms. Rubin, through her counsel, notified Apex on 19 May 2015 of her intent to challenge the Direct Condemnation Action on the grounds that the condemnation was for a private purpose. For that reason, she encouraged Apex "to not commence any construction activities until after the motion was heard . . . to mitigate any actions caused by premature construction activities." Apex responded by email on 22 May 2015, requesting that Ms. Rubin "quickly" file her motion and schedule a hearing because the "Town's project is scheduled to move forward and . . . cannot [be] put . . . on hold for an undetermined period of time."

On 10 June 2015, Apex contacted Ms. Rubin's counsel again, stating that because "the Town has heard nothing from Ms. Rubin regarding the issues . . . [Apex] will move the construction of the project forward." Ms. Rubin's counsel responded immediately stating that they were preparing a request for production of documents necessary prior to bringing the motion. Two days later, on 12 June 2015, Apex

notified Ms. Rubin the town "need[ed] to move forward with the project" notwithstanding Ms. Rubin's objection.

Ms. Rubin timely filed her answer to the complaint on 8 July 2015. Among other things, she asserted that the North Carolina Constitution, the United States Constitution and North Carolina statutes prohibited Apex from taking Ms. Rubin's land because the town was using its power of eminent domain for the financial gain of a private developer. Ms. Rubin contended that Apex's proposed taking was unlawful because the taking was for a private rather than a public purpose. In her request for relief, Ms. Rubin sought declaratory relief establishing that the "Town of Apex does not possess the right of eminent domain as applied to the areas stated within the Complaint" and, in the alternative, she requested a trial by jury as to just compensation. Ms. Rubin did not request injunctive relief. Two weeks later, on 27 July 2015, Apex installed the sewer line.

Nearly one year passed before any new activity in the matter occurred. On 8 April 2016, Ms. Rubin moved for a hearing under N.C.G.S. § 136-108, during which the trial court would address "all issues raised by the pleadings other than just compensation." Apex also moved for a hearing under N.C.G.S. § 136-108 on 13 July 2016. The trial court scheduled that hearing for 1 August 2016. Prior to the hearing, Apex filed an affidavit from Mr. Timothy Donnelly, the Assistant Town Manager for the Town of Apex, attesting that the sewer line had been installed. Mr. Donnelly

represented that "this sewer line is part of a public project" but acknowledged that Mr. Zadell paid for the town's condemnation costs.

During the N.C.G.S. § 136-108 hearing, the trial court concluded that the "paramount reason for the taking of the sewer easement [was] for a private purpose and the public's interest [was] merely incidental." The trial court entered a judgment on 18 October 2016 (Private Purpose Judgment) finding that Apex's exercise of eminent domain was null and void and thus dismissed the Direct Condemnation Action.

On 28 October 2016, Apex moved for reconsideration of the Private Purpose Judgment or, in the alternative, relief from judgment under Rule 60 of the North Carolina Rules of Civil Procedure. In support of reconsideration, Apex largely reiterated its position that the condemnation was for a public purpose. The trial court denied Apex's motion for reconsideration on 24 January 2017. Apex appealed to the Court of Appeals on 30 January 2017.

On appeal, Ms. Rubin argued that Apex's appeal was untimely because, under Rule 3 of the North Carolina Rules of Appellate Procedure, Apex was required to enter a notice of appeal within thirty days of the trial court's 18 October 2016 order. The Court of Appeals agreed, holding that the motion for reconsideration did not toll the thirty-day period and dismissed the appeal. *See Town of Apex v. Rubin (Apex I)*, 262 N.C. App. 148, 150–53 (2018). Apex petitioned this Court for discretionary review, but this Court denied the petition.

## B. Trial Court Proceedings Before Judge Collins

With the Court of Appeals' dismissal of the appeal, the trial court's Private Purpose Judgment became final and law of the case. *Apex I*, 262 N.C. App. at 151 ("[A] Section 108 judgment becomes a final judgment on the issues it addresses if it is not immediately appealed . . . .").[2] Nevertheless, because the judgment's effect was only declaratory and Apex had already installed the sewer line, the final judgment did not have immediate effect.

On 10 April 2019, Ms. Rubin moved under Rule 70 of the North Carolina Rules of Civil Procedure to enforce the Private Purpose Judgment by having Apex remove the sewer line. In her motion, Ms. Rubin identified six legal theories under which the trial court should require Apex to remove the sewer line: (1) execution authority under N.C.G.S. § 1-298; (2) contempt authority under N.C.G.S. § 1-302; (3) declaratory authority under N.C.G.S. § 1-259; (4) Rule 70 of the North Carolina Rules Civil Procedure; (5) inherent judicial authority; and (6) mandamus authority. Apex opposed each of Ms. Rubin's contentions, averring that Ms. Rubin waived any injunctive relief, that the Private Purpose Judgment merely rendered the direct condemnation claim "null and void"—"as if it had not been filed." Her sole remedy— in Apex's view—was an inverse condemnation action, which is an action against a

---

[2] Neither the Court of Appeal nor this Court considered the merits of the trial court's determination that Apex took the easement for a private purpose. Our decision today takes no position on whether the trial court properly decided that issue.

government entity to recover the value of property taken without a formal exercise of eminent domain.

Apex then took the unusual step of filing a separate action against Ms. Rubin in 2019 seeking declaratory relief that Apex gained an easement by inverse condemnation when it installed the sewer line (Inverse Condemnation Declaratory Judgment Action). Apex requested a preliminary and permanent injunction to keep Ms. Rubin "from removing or disturbing the sewer line and easement." In this Inverse Condemnation Declaratory Judgment Action, Apex sought a judicial declaration that Apex had obtained an easement by inverse condemnation across Ms. Rubin's property when Apex installed the sewer line. Further, Apex argued that Ms. Rubin was not entitled to compensation for the easement because the statute of limitations had run. Three days after the filing of this action, Ms. Rubin moved to dismiss the action on res judicata and prior pending action grounds.

The trial court exercised its authority under N.C.G.S. § 136-114 to stay all proceedings in both cases and ordered mediation. Mediation ended in impasse.[3] On 30 August 2019, Apex filed a motion for relief from the Private Purpose Judgment

---

[3] In light of the Supreme Court of the United States' decision in *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019), which eliminated the requirement to exhaust state remedies in Takings Clause claims brought under 42 U.S.C. § 1983, Ms. Rubin sought injunctive relief in federal court on 11 October 2019. *See Rubin v. Town of Apex*, No. 5:19-CV-449-BO, 2020 WL 1491662, at *2 (E.D.N.C. Mar. 27, 2020). That case was later dismissed under the *Princess Lida* abstention doctrine. *Id.*

arguing that the judgment was moot because Apex acquired an easement across Ms. Rubin's property when it installed the sewer line.

The trial court held a hearing to address the motions in both cases jointly. Specifically, the trial court considered Ms. Rubin's motion to enforce the Private Purpose Judgment, Apex's motion for relief from the Private Purpose Judgment, and Ms. Rubin's motion to dismiss Apex's Inverse Condemnation Declaratory Judgment Action. In the action where the Private Purpose Judgment was the law of the case, the trial court entered two orders. The first order denied Ms. Rubin's motion to enforce judgment by ordering Apex to remove the sewer line. The trial court concluded that because Ms. Rubin did not originally request injunctive relief, the trial court did not have the authority under the Private Purpose Judgment to order Apex to remove the sewer line. In the trial court's view, Ms. Rubin had an adequate remedy at law: compensation for the inverse condemnation in Apex's Inverse Condemnation Declaratory Judgment Action.

In a separate order related to the Private Purpose Judgment, the trial court also granted Apex's motion for Rule 60 relief from the judgment in the 2015 Direct Condemnation Action because Ms. Rubin did not seek an injunction before Apex completed construction of the sewer line. The trial court concluded that Apex was not seeking relief related to the Private Purpose Judgment; rather, Apex was seeking "prospective application of the [j]udgment as it relate[d] to the existence of the underground sewer pipe and corresponding inversely condemned easement."

Because Apex had taken the easement before the entry of the Private Purpose Judgment, the trial court concluded that it lacked subject matter jurisdiction "to enter the [Private Purpose] Judgment to the extent the Judgment is interpreted to negatively affect the installed sewer pipe and corresponding easement." Under the trial court's theory, the Private Purpose Judgment against the town was void as to the installed pipe and corresponding easement. Because Apex took the easement before the trial court determined the taking was void, Apex owned both the sewer line and the easement. Further, the trial court invoked *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540 (2018), to conclude "that public use or purpose is not an element of an inverse condemnation claim." The trial court thus explained its belief that injunctive relief was not available to Ms. Rubin and her only remedy at law was compensation for the inverse condemnation. Ms. Rubin appealed both of these orders to the Court of Appeals.

In a separate order in Apex's Inverse Condemnation Declaratory Judgment Action, the trial court also granted Apex's requested preliminary injunction which prohibited Ms. Rubin from disturbing the sewer line while the action was pending. The trial court found that an injunction was necessary to preserve the status quo and avoid injury to Apex as removal of the sewer line would interrupt sewer service to residents of the town. Further, in the trial court's view, Apex was likely to succeed on the merits on an inverse condemnation theory. Ms. Rubin appealed this interlocutory order to the Court of Appeals.

**C. Court of Appeals Proceedings**

Because the cases were not consolidated, the Court of Appeals addressed the trial court's orders in two separate opinions. *See Town of Apex v. Rubin* (*Apex II)*, 277 N.C. App. 328 (2021); *Town of Apex v. Rubin* (*Apex III)*, 277 N.C. App. 357 (2021). In *Apex II*, the Court of Appeals reviewed the orders in the Direct Condemnation Action where the Private Purpose Judgment had been entered. 277 N.C. App. at 329. The Court of Appeals held that the trial court erred when it concluded that the Private Purpose Judgment precluded mandatory injunctive relief. *Id.* Further, the Court of Appeals concluded that while mandatory injunctive relief may be available to Ms. Rubin in an action for trespass, she was not entitled to post-judgment mandatory injunctive relief in the 2015 Direct Condemnation Action because she did not request injunctive relief in the pleadings. *Id.* The Court of Appeals thus vacated the trial court's orders insofar as the orders "preclude[d] the availability of mandatory injunctive relief." *Id.* The Court of Appeals also reversed the order granting Apex's relief from judgment. *Id.* But the Court of Appeals affirmed the trial court's denial of Ms. Rubin's motion to enforce the original judgment by forcing Apex to remove the sewer line. *Id.* at 344–48, 356.

As to Apex's Inverse Condemnation Declaratory Judgment Action, the Court of Appeals ruled in *Apex III* that res judicata barred most of Apex's claims, including its claim to (1) title of the sewer easement; (2) inverse condemnation as Ms. Rubin's sole remedy; (3) compensation being her sole form of relief; and (4) mandatory

injunctive relief being unavailable. *Apex III*, 277 N.C. App. at 365–67. However, the Court of Appeals concluded that a question remained as to what to do about the installed sewer pipe installed on land owned in fee simple by Ms. Rubin. *Id.* The Court of Appeals vacated certain findings of facts and conclusions of law in the preliminary injunction order; however, the appeals court left the preliminary injunction in place because Ms. Rubin had not met her burden of rebutting "the presumption that the trial court correctly determined [Apex] was likely to succeed on this claim." *Id.* at 370–71. The Court of Appeals affirmed the trial court's preliminary injunction against Ms. Rubin and remanded for further proceedings. *Id.* at 370.

Apex then filed petitions for discretionary review with this Court in both cases. We allowed both petitions and consolidated the cases. We also allowed Ms. Rubin's conditional petition for discretionary review on the issue of whether the Court of Appeals erred "by failing to order [Apex] to stop its occupation of Ms. Rubin's land[.]"

### III.    Analysis

**A. Inverse Condemnation Declaratory Judgment Action**

Before addressing the dispute around the easement, we must first address the procedural issue of whether Apex was precluded from filing the 2019 Inverse Condemnation Declaratory Judgment Action while the 2015 Direct Condemnation Action was pending. We conclude it was.

Under the prior action pending doctrine, "pendency of a prior action between the same parties for the same cause . . . works an abatement of a subsequent action"

in a court with like jurisdiction.  *Clark v. Craven Reg'l Med. Auth.*, 326 N.C. 15, 20 (1990) (citing *McDowell v. Blythe Bros. Co.*, 236 N.C. 396, 399 (1952)).  Abatement disincentivizes parties from filing a "multiplicity of actions" when the issues can be resolved in the original case.  *Id.* at 20 ("This is so because the court can dispose of the entire controversy in the prior action and in consequence the subsequent action is wholly unnecessary.").

An action is pending "until its final determination by judgment."  *Id.* (quoting *McDowell*, 236 N.C. 396).  This Court has held that cases pending in the appellate court may serve as a prior action pending in a subsequent action between the same parties upon the same issues.  *Id.* at 21.  The Court of Appeals ruled that the 2015 Direct Condemnation Action was no longer pending because of the Private Purpose Judgment.  *Apex III*, 277 N.C. App. at 369.  But a disposition is not truly "final" unless it is "such a conclusive determination of the subject-matter that after the award, judgment, or decision is made, nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon." *Whitworth v. Whitworth*, 222 N.C. App. 771, 780 (2012) (cleaned up); *see also N.C. Dep't of Transp. v. Laxmi Hotels of Spring Lake, Inc.*, 259 N.C. App. 610, 614–15 (2018) ("A judgment is final if it leaves nothing further to be done in the trial court." (cleaned up)).

At the conclusion of the hearing to resolve all issues related to the title of the property, the trial court entered the Private Purpose Judgment.  Generally, an order

from a section 136-108 hearing, addressing all issues other than just compensation in a condemnation action, is not a final judgment. *See* N.C.G.S. § 136-108 (2023) (defining the scope of the hearing as addressing all issues other than damages); *Dep't of Transp. v. Bloomsbury Ests.*, 386 N.C. 384, 393 (2024) (explaining that the hearing held pursuant to N.C.G.S. § 136-108 resolves "questions related to the title of land taken, interest in the land, proper parties, and all issues other than damages"). The Private Purpose Judgment was not a final judgment here because it did not resolve the hotly disputed issue of damages.

The Private Purpose Judgment would have resolved all of the issues in the action if Apex had not installed the sewer line. However, because Apex installed the pipe, the Private Purpose Judgment was not final for purposes of the prior pending action doctrine because it left unresolved the question of damages, including appropriate remedy. Our holding on this front comports with the doctrine's core purpose—preserving judicial economy—as it was still possible for Apex to obtain its desired relief without filing the separate Inverse Condemnation Declaratory Judgment Action. *See Eways v. Governor's Island*, 326 N.C. 552, 560–61 (1990) (recognizing that a case that "raises substantially the same issues between substantially the same parties as a subsequent action" should—in the interest of judicial economy—be abated).

Of course, not all pending actions warrant abatement of subsequently filed actions. The test for whether the parties and causes are the same for abatement

purposes is whether the actions are substantially similar "as to parties, subject matter, issues involved, and relief demanded[.]" *Cameron v. Cameron*, 235 N.C. 82, 85 (1952). Utilizing this test, Apex's Inverse Condemnation Declaratory Judgment Action is substantially similar to the Direct Condemnation Action and therefore should be abated. First, the 2015 Direct Condemnation Action and Apex's Inverse Condemnation Declaratory Judgment Action both involve identical parties: Ms. Rubin and Apex. Second, both actions concern the same subject matter: the sewer line easement across Ms. Rubin's property. Indeed, the fact that Apex could "obtain the same relief . . . in the first action," *Gardner v. Gardner*, 294 N.C. 172, 175 n.4 (1978), supports a conclusion that Apex's Inverse Condemnation Declaratory Judgment Action presents the same issue being litigated in the 2015 Direct Condemnation Action.

Lastly, the parties demand substantially similar relief in both actions: mandatory injunctive relief regarding the continued existence or removal of the sewer line across Ms. Rubin's property. In its post-judgment motions for relief in the 2015 Direct Condemnation Action, Apex asked the trial court to deny Ms. Rubin any prospective injunctive relief and order "that the sewer line and easement not be removed from [Ms.] Rubin's property." Likewise, in its Inverse Condemnation Declaratory Judgment, Apex asked for (1) declarations that Ms. Rubin could not seek a mandatory injunction to remove the sewer line and (2) a preliminary prohibitory injunction to prevent Ms. Rubin from removing the sewer line. As we explained in

*Clark*, although declaratory and injunctive relief "are procedurally distinct," the remedies are sufficiently similar if "the intended result would be the same." *Clark*, 326 N.C. at 22. Here, Apex seeks declaratory and injunctive relief for the same purpose: to leave the sewer line where it is. Thus, both actions seek substantially similar relief.

Our conclusion is consistent with a principle we endorsed in *Clark*: "[W]here an action is pending between the parties, a plaintiff *cannot* bring another action involving the same subject matter and the same defendant even where the first suit demanded remedies clearly distinct from the second." *Id.* at 22–23 (emphasis added); *see also State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 348 (1984) ("Nor may the desire to 'accelerate' the judicial process displace the general rule that courts will not entertain a declaratory judgment proceeding if there is pending . . . another action in which the same persons are parties and in which the same issues involved in the declaratory action may be adjudicated."). Holding otherwise would allow parties not only a second bite at the apple but the ability to take "bit[es] in two places at the same time." *Vinson v. O'Berry*, 209 N.C. 289, 290 (1936).

For these reasons, we conclude that our long-established prior pending action doctrine, which strives to advance the interest of judicial economy, precludes Apex's second lawsuit against Ms. Rubin. Those claims should have been raised in the 2015 Direct Condemnation Action during the N.C.G.S. § 136-108 hearing. Apex's 2019 Inverse Condemnation Declaratory Judgment Action should be dismissed. Thus, we

vacate *Apex III*, 277 N.C. App. 357, and remand to the Court of Appeals with instructions for further remand to the trial court to dismiss the action with prejudice.

**B. Direct Condemnation Action**

On the merits of the 2015 Direct Condemnation Action, there are two questions left for this Court to resolve given that the Private Purpose Judgment is law of the case.[4] The first question is who has title to the sewer easement: Ms. Rubin or Apex. The second question is what remedies are available for Apex's intrusion onto Ms. Rubin's property. Ms. Rubin argues that she holds title to the property free of any easement in favor of Apex and requests a mandatory injunction requiring Apex to remove the sewer line from her property. In contrast, Apex argues that because it installed the pipe before the trial court entered the Private Purpose Judgment, Apex has title to an easement across Ms. Rubin's land and the only remedy available to Ms. Rubin is monetary damages.

Here, the trial court concluded that the land was taken for a private purpose and the appeals were exhausted without a different conclusion being reached; that decision is the law of the case. *See N.C. Nat. Bank v. Va. Carolina Builders*, 307 N.C.

---

[4] This case is procedurally thorny, and unfortunately so, but we resolve the matter in light of the equities and the duration of the constitutional violation. This matter could have been resolved in a much more efficient manner, with an eye to conserving judicial resources, had, for example: Ms. Rubin sought injunctive relief in her response to the complaint in the Direct Condemnation Action, Apex brought its claim for inverse condemnation at the N.C.G.S. § 136-108 hearing, or Ms. Rubin filed a complaint for the constitutional violation of trespass and sought mandatory injunctive relief once the Private Purpose Judgment became the law of the case. Parties should strive to resolve litigation in a manner that is as expeditious and direct as possible.

563, 566 (1983) (recognizing that "[o]nce an appellate court has ruled on a question that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case"). Because of this, the Private Purpose Judgment revested title to the easement in Ms. Rubin and Apex does not have title to a sewer easement across Ms. Rubin's property. Because Apex does not have the title to a sewer easement, a trial court has inherent authority to order monetary damages, mandatory injunctive relief, or other relief the court in its discretion deems proper for Apex's continuing trespass on Ms. Rubin's property.

### 1. *Title to the Sewer Easement*

Because inverse condemnation has been invoked in this dispute, it is worth examining the interplay between condemnation and inverse condemnation. Generally, municipalities possess the power of eminent domain because they are a subdivision of the State and have "the right to take private property for public use." *Town of Morganton v. Hutton & Bourbonnais Co.*, 251 N.C. 531, 533 (1960). This authority is statutorily granted to various entities, including "public condemnors," under N.C.G.S. §§ 40A-40 to 40A-85. Apex is also authorized to invoke the Department of Transportation's condemnation procedures found in N.C.G.S. §§ 136-103 to 136-121.1, to acquire land for sewer lines, among other purposes. *See* An Act to Grant Additional Eminent Domain Powers to the Town of Apex for Water and Sewer Lines and Water and Sewer Treatment Facilities, ch. 70, § 1, 1987 N.C. Sess. Law 56. The condemnation procedure in Chapter 136 provides an avenue for the

immediate possession of private property by the government so long as the taking is for a public purpose.  N.C.G.S. § 136-104 (2023).

In contrast, when the government—acting intentionally or unintentionally—takes land outside of the eminent domain process, our statutes provide for a private action against the government known as inverse condemnation.  N.C.G.S. § 136-111 (2023); *Wilkie*, 370 N.C. at 552 ("Inverse condemnation is a term often used to designate a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." (cleaned up)).  Inverse condemnation, as outlined in section 136-111, provides a cause of action and remedy for the *landowner* which, if exercised, "forces a governmental body to exercise its power of condemnation, even though it may have no desire to do so."  *Hoyle v. City of Charlotte*, 276 N.C. 292, 302 (1970) (cleaned up); *see also Wilkie*, 370 N.C. at 552.  But, as the statute outlines, such an action is only available if the taking is informal—"no complaint and declaration" were filed.  N.C.G.S. § 136-111; *see also* N.C.G.S. § 40A-51(a) (2023) (providing a remedy when property is taken and no complaint containing a declaration of taking is filed).  Thus, if the government entity has initiated formal condemnation proceedings, no inverse condemnation takes place or, under our statutes, could have taken place.  *See* N.C.G.S. § 136-111 (establishing that a person may file an action only if the government takes an interest in the land without filing a complaint or declaration of

taking); *see also Wilkie*, 370 N.C. at 552 (acknowledging that when the government takes property outside of the eminent domain process, the property owner is due just compensation even when the property is taken without justification).

In the 2015 Direct Condemnation Action, the trial court determined that Apex acted outside of its eminent domain power because it took the property for a private purpose. But Apex argues that because the determination that the taking was for a private purpose happened after Apex had already installed the pipe, Apex automatically gains title to the sewer easement by inverse condemnation. This "heads I win, tails you lose" argument cannot be right. In Apex's view, if it exercises its eminent domain authority properly, it gains title to an easement across Ms. Rubin's property but if it exceeds its eminent domain authority and improvidently trespasses before the question of the taking's purpose has been finally answered, it also gets title to an easement across Ms. Rubin's property by inverse condemnation. This Court disavowed such logic in *State Highway Commission v. Thorton* when it held that the government "may not, by precipitate entry and construction, enlarge its own powers of condemnation." 271 N.C. 227, 237 (1967).

Here, Apex was on notice that Ms. Rubin was asserting a defense that Apex lacked authority to condemn the land because the condemnation was for a private purpose. Apex initiated the eminent domain process by filing the Direct Condemnation Action on 30 April 2015 and Ms. Rubin filed a timely response on 8 July 2015 asserting the defense that the taking was not for a public purpose. Two

weeks after Ms. Rubin responded indicating that the taking was improper, Apex moved forward with installing the sewer line across Ms. Rubin's land. Because Ms. Rubin timely asserted the defense that the taking was for a private purpose, Apex may not use the installation of the pipe to strip Ms. Rubin of her property rights. *See id.* at 237 (recognizing that a premature taking of property is not a bar to the right of the landowner to reclaim title to the property).

We identify further error in the trial court's analysis of whether injunctive relief was available related to the Private Purpose Judgment. The trial court in the Private Purpose Judgment found that Ms. Rubin's land was taken for a private purpose and Apex's claim to Ms. Rubin's property by eminent domain was "null and void." When Ms. Rubin moved to enforce this judgment under Rule 60 of the North Carolina Rules of Civil Procedure and have the sewer line removed from her property, the trial court concluded that Ms. Rubin's "failure to seek and obtain injunctive relief prior to the construction of the sewer pipe and the Town's acquisition of the sewer easement by inverse condemnation renders the [j]udgment moot as to the installation of the sewer pipe and corresponding easement." In the trial court's view, when the Private Purpose Judgment found that Apex's claim to the property by eminent domain was "null and void," the result was as if the 2015 Direct Condemnation Action "was never filed." Thus, the trial court concluded, because Apex "physically invaded [Ms. Rubin's] property . . . without a condemnation action," an inverse condemnation occurred.

But the trial court acted under a misapprehension of the law because the effect of the Private Purpose Judgment was to revest title in Ms. Rubin, not to erase the fact that Apex did seek formal condemnation of the land. As this Court recognized in *Thorton,* when a government entity enters land relying "upon its own opinion as to its authority" and "that opinion was erroneous, the [landowners] are entitled to have the [Direct Condemnation Action] dismissed, leaving them to whatever rights they may have against those who have trespassed upon their land and propose to continue to do so." *Id.* at 240.

Further, the Private Purpose Judgment's "null and void" language does not operate as a time machine; it does not undo the fact that Apex filed a complaint and then entered the land relying upon its own opinion that the taking was for a public purpose. Ms. Rubin did not have an action, and thus remedy, for inverse condemnation under N.C.G.S. § 136-111 because Apex filed a complaint and declaration of taking; inverse condemnation only occurs when the government entity takes an interest in land without filing a complaint. *See* N.C.G.S. § 136-111 (allowing a remedy under the inverse condemnation statute when "land or [a] compensable interest therein has been taken by an intentional" act of the Department and "no complaint and declaration of taking has been filed"). As *Wilkie* and *Hoyle* proclaim, the remedy associated with the inverse condemnation statute is *only* available to the *landowner*—not the government entity—when "no formal exercise of the power of eminent domain has been attempted by the taking agency." *Wilkie*, 370 N.C. at 552

(cleaned up); *see also Hoyle*, 276 N.C. at 302. Apex may not—after exceeding its eminent domain power—distort the purpose of N.C.G.S. § 136-111 to take possession of the sewer easement that our courts denied in the 2015 Direct Condemnation Action. The effect of the Private Purpose Judgment was to revest title of the sewer easement in the landowner, Ms. Rubin, not to erase the action and give Apex a back door means to regain the easement.

This is not a novel view. In *State Highway Commission v. Batts*, 265 N.C. 346 (1965), this Court reversed a trial court's judgment in a direct condemnation action because the exercise of eminent domain was for a private purpose. *Id.* at 361. After so resolving the major issue, the Court also concluded that the condemnor's "cutting of growing trees upon [the] land" was not a taking but instead an "unauthorized trespass." *Id.* The Court's characterization of the condemnor's action as a trespass— the physical invasion of someone's property—suggests that because the condemnor's taking was unlawful, the rights to the property revested in the landowner. *See also Thornton*, 271 N.C. at 240 (recognizing a claim for trespass against a government entity that takes land for a private purpose).

Additionally, the trial court further erred in this case in determining that Judge O'Neal lacked jurisdiction to enter the Private Purpose Judgment because Apex had already taken the property. A trial court is not deprived of jurisdiction in an action under Article 9 of Chapter 136 of the General Statutes because a condemnor completes construction before the trial court adjudicates its direct condemnation

action. To hold otherwise would contradict long-standing precedent. *See Pelham Realty Corp. v. Bd. of Transp.*, 303 N.C. 424, 432–33 (1981) (ruling that a landowner may still challenge the validity of a condemnation even after construction is finished); *Thornton*, 271 N.C. at 240 (same).

In sum, we conclude that the trial court acted under a misapprehension of the law when it ruled that Apex retained "all easement rights in the property" notwithstanding the Private Purpose Judgment. The Private Purpose Judgment revested title in the property to Ms. Rubin. Ms. Rubin thus owns the land free of any easement and the sewer line constitutes a continuing trespass on the part of Apex.

### 2. *Mandatory Injunctive Relief*

With the clarification that title and right to possession of the easement revested with Ms. Rubin, the remaining issue is whether Ms. Rubin may seek a mandatory injunction requiring Apex to remove the sewer line. We conclude that she may. However, we remand for a weighing of the equities by the trial court to determine whether a mandatory injunction or money damages is the proper remedy for this continuing trespass of the sewer pipe on Ms. Rubin's land.

### a. *Issuing Injunctions Is Within a Court's Inherent Authority*

The trial court rejected Ms. Rubin's motion to enforce the original judgment for a host of reasons. Among them was that "the [c]ourt is not authorized to . . . order mandatory injunctive relief that [Ms. Rubin] did not request or plead." The trial court

misunderstood the judiciary's inherent authority to grant relief where a constitutional right has been infringed upon.

Article 1, Section 19 of the North Carolina Constitution provides that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. This Court has long recognized that "if no statute affords an adequate remedy for depriving an owner of private property" without just compensation or its equivalent, then the court must fashion a remedy which "will furnish the appropriate action for the adequate redress of such grievance." *Sale v. State Highway & Pub. Works Comm'n*, 242 N.C. 612, 618 (1955); *see also Corum v. Univ. of N.C.*, 330 N.C. 761, 783 (1992) ("It is the state judiciary that has the responsibility to protect the state constitutional rights of the citizens[.]"). "[E]ntry of a judgment is not sufficient"—nothing short of actual payment, or its equivalent, constitutes just compensation. *Sale,* 242 N.C. at 618. "Once a right and a violation have been shown, the scope of a [trial] court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

An injunction is an equitable remedy well within our inherent authority. *See In re Alamance Cnty. Ct. Facilities*, 329 N.C. 84, 103–04 (1991) (acknowledging that mandatory injunctions and writs of mandamus are remedies to ensure government officials perform constitutional and statutory duties); *see also Richmond Cnty. Bd. of Educ. v. Cowell*, 254 N.C. App. 422, 426 (2017) ("[C]ourts possess the power to issue

injunctions and extraordinary writs."); *Pelham Realty Corp.*, 303 N.C. at 431; *cf. Dalenko v. Peden Gen. Contractors, Inc.*, 197 N.C. App. 115, 127 (2009) ("As part of its inherent authority, the trial courts of this state have the power to prohibit future frivolous and repetitive litigation.").

### b. *Whether Injunctive Relief Is Appropriate Requires Weighing the Equities*

The trial court declined to invoke its inherent authority because Ms. Rubin "did not request or plead" mandatory injunctive relief.[5]   However, Ms. Rubin is entitled to some relief, be it damages or a mandatory injunction, for the continuing trespass on her property.   The trial court must consider the totality of the circumstances when determining whether mandatory injunctive relief is appropriate, and thus remand for that factual analysis is the appropriate next step.

A mandatory injunction is "affirmative in character" and "require[s] positive action involving a change of existing conditions—the doing or undoing of an act." *Roberts*, 344 N.C. at 399–400 (cleaned up); *see also Seaboard Air Line R.R. Co. v. Atl. Coast Line R.R. Co.*, 237 N.C. 88, 94 (1953) ("[A court] may, by its mandate, compel the undoing of those acts that have been illegally done . . . ."). In determining whether a mandatory injunction is appropriate, we have instructed courts to balance "equities,

---

[5] The trial court further determined that injunctive relief was unavailable to Ms. Rubin because she had an "adequate remedy at law"—an inverse condemnation claim. Of course "equitable intervention is obviated when an adequate remedy at law is available." *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 491 (1992).   But as we already explained, there was no cause of action was available to Ms. Rubin under section 136-111. The trial court erred here because Ms. Rubin had no other form of relief available.

hardships, and the interests of the public and of third persons." *Roberts*, 344 N.C. at 399 (recognizing that a merger does not automatically render as moot the parties request for a mandatory injunction); *see also Clark v. Asheville Contracting Co.*, 316 N.C. 475, 488 (1986) (cautioning the trial court when considering a mandatory injunction on remand to "consider the relative convenience-inconvenience and the comparative injuries to the parties" (cleaned up)). In *Williams v. South & South Rentals, Inc.*, 82 N.C. App. 378 (1986), the Court of Appeals expounded on this balancing test by considering the following factors: (1) whether the party "acted in good faith or intentionally built on the adjacent land and" (2) "whether the hardship incurred in removing the structure is disproportionate to the harm caused by the encroachment." *Id.* at 384. At least in the case of violation of a building restriction, this Court has recognized that a mandatory injunction cannot be avoided on the theory that the loss caused is disproportionate to the good accomplished. *See Ingle v. Stubbins*, 240 N.C. 382, 391 (1954). "Mere inconvenience and expense are not sufficient to withhold injunctive relief." *Williams*, 82 N.C. App. at 384.

Importantly, though, equitable weighing is a practice "clearly within the province of the trial court." *Buie v. High Point Assocs. Ltd. P'ship*, 119 N.C. App. 155, 161 (1995); *see also Clark*, 316 N.C. at 488 (remanding an injunctive relief appeal to the trial court for a balancing of the equities). Thus, we must remand the question of the proper remedy to the trial court for determination after it has balanced the

equities. The wide range of remedies available to the trial court, depending on the current and competent evidence presented to it, only confirms the need for remand.

On remand, in weighing the equities, the trial court should consider whether Apex acted in good faith when it installed the sewer line notwithstanding Ms. Rubin's notice of intent to challenge. *See Williams*, 82 N.C. App. at 384. The trial court should also consider the impact on the fifty homeowners that rely upon the sewer line. The trial court is not precluded, for example, from considering whether, in ordering different mandatory injunctive relief, Apex should install a replacement sewer line or pumping station, then remove the offending sewer line, and pay Ms. Rubin a reasonable rental rate for the time period when the sewer line was on her property. Likewise, the trial court is not precluded from determining that monetary damages are the least intrusive remedy. But the trial court should take care to ensure that money damages do not merely give Ms. Rubin the value of the property taken from her in 2015. Such a remedy would be what Apex would have paid had it been successful in the 2015 Direct Condemnation Action or the 2019 Inverse Condemnation Declaratory Judgment Action, had this taking been deemed constitutional. As we rejected above, Apex securing the line and paying what it wanted to pay in 2015 cannot be a meaningful remedy for a constitutional violation. As part of the totality of the circumstances analysis, the trial court is authorized to accept evidence on the range of appropriate remedies and damages, from what it

would have cost to construct an alternative sewer line that did not cross Ms. Rubin's property to how property values have changed over the last decade.

## IV. Conclusion

Apex may only exercise the power of eminent domain for a public purpose. When the trial court determined that Apex exercised its eminent domain power for a private purpose and that conclusion was not altered after final appeal, title to the property revested in the private landowner. When a government entity takes private property for a private purpose, the trial court may, as an exercise of its inherent power, order a mandatory injunction to restore the property to its original condition after weighing the equitable considerations applicable to devising a remedy.

Thus, in the 2015 Direct Condemnation Action, *Apex II*, 277 N.C. App. 328, we affirm the Court of Appeals' decision vacating the trial court's order denying Ms. Rubin's motion to enforce the Private Purpose Judgment and declaring that the Town took an easement by inverse condemnation, the judgment was moot, and the judgment was void. Further, we reverse the Court of Appeals' holding that the judgment does not establish a right to mandatory injunctive relief and remand to the Court of Appeals for further remand to the trial court. On remand, the trial court should balance the equities to determine whether monetary damages or a mandatory injunction removing the sewer line after installation of an alternate sewer line is the appropriate remedy.

Further, in Apex's 2019 Inverse Condemnation Declaratory Judgment Action, *Apex III*, 277 N.C. App. 357, we vacate the Court of Appeals' decision affirming in part and vacating in part the preliminary injunction order. We remand Apex's 2019 Inverse Condemnation Declaratory Judgment Action to the Court of Appeals with instruction for further remand to the trial court to dismiss the action with prejudice. Nothing in this opinion precludes Apex from requesting a preliminary injunction in the 2015 Direct Condemnation Action during the pendency of the trial court's hearing for the appropriate remedy.

AFFIRMED in part, VACATED in part, REVERSED in part, and REMANDED.

Chief Justice NEWBY concurring in part and concurring in the result only in part.

It is said that "bad cases make bad law." This saying is true both substantively and procedurally. I am concerned about how cases such as this one will be handled going forward, and I hope that the procedural tangle here does not create procedural issues in the future. To be clear, this case is procedurally abnormal and should not serve as a model for future litigants involved in takings disputes. In an ideal world, defendant would have sought relief from plaintiff's unlawful incursion onto her property through a counterclaim in the direct condemnation action or her own independently commenced action after plaintiff's appeal was exhausted. She did not. Given that this matter has languished in the court system for over a decade, however, I agree with the decision to remand for further proceedings on defendant's motion to enforce the judgment in the direct condemnation action to determine how to appropriately remedy plaintiff's ongoing intrusion onto defendant's property. I also agree with the decision to vacate the declaratory judgment action. Although I concur with much of the majority's analysis, I write separately to clarify a few points where my analysis differs from that of the majority. I respectfully concur in part and concur in the result only in part.

As the majority opinion recounts, on 30 April 2015, plaintiff, under Chapter 136 of the General Statutes, filed a complaint against defendant to condemn a sewer

easement across her property, and it simultaneously filed a declaration of taking and deposited the estimated just compensation.[1] On 8 July 2015, defendant answered. She did not assert any counterclaims or seek an injunction. Instead, defendant asserted two affirmative defenses: first, that plaintiff's taking was unconstitutional, and second, that she was entitled to attorney's fees and other costs as part of any "just compensation." On 27 July 2015, plaintiff installed a sewer line under defendant's property.

The trial court held a hearing under section 136-108 on 1 August 2016,[2] and on 18 October 2016, the trial court entered a written judgment. The trial court concluded that plaintiff's taking was not for a public use. Accordingly, the trial court adjudged that "[p]laintiff's claim to . . . [d]efendant's property by [e]minent [d]omain is null and void," and it dismissed plaintiff's claim. The judgment did not expressly command plaintiff to remove the sewer line. Plaintiff appealed the judgment, but the Court of Appeals dismissed the appeal as untimely. *Town of Apex v. Rubin* (*Town of Apex I*), 262 N.C. App. 148, 152–53, 821 S.E.2d 613, 616–17 (2018), *disc. rev. denied*,

---

[1] Although normally set out for use by the Department of Transportation, plaintiff's charter permits it use Chapter 136's procedure. An Act Repealing the Expiration of an Act Authorizing the Town of Apex to Use the Procedure and Authority of Chapter 136 of the North Carolina General Statutes in Condemnation Proceedings Concerning Public Streets and Roads, and Allowing Use for Electric Facilities, S.L. 2007-37, § 2, 2007 N.C. Sess. Laws 29, 29–30.

[2] *See generally* N.C.G.S. § 136-108 (2023) ("After the filing of the plat, the judge, upon motion and 10 days' notice by either the Department of Transportation or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken.").

372 N.C. 107, 835 S.E.2d 253 (2019). Accordingly, the trial court's judgment became the law of the case.[3]

On 10 April 2019, shortly after this Court denied discretionary review in plaintiff's appeal, defendant moved to enforce the judgment by enjoining plaintiff to remove the sewer line, and she alternatively petitioned for a writ of mandamus. In support of her motion, defendant cited several grounds that she contended authorized the trial court to issue an injunction. Pertinently, she maintained, "[The trial court] has the power to enforce its own judgments. Such power is inherent . . . . [The trial court] has inherent authority to enter any order to make its judgment . . . effective."

On 30 August 2019, plaintiff moved under Rule 60 of the North Carolina Rules of Civil Procedure for relief from the judgment. Plaintiff's rationale was convoluted. Plaintiff argued that its construction of the sewer line "constituted a[n] . . . inverse condemnation" and that it had acquired title to the easement by said inverse condemnation *before* the trial court dismissed the 2015 Direct Condemnation Action. As such, plaintiff maintained that the trial court had no subject matter jurisdiction in the direct condemnation action, that the judgment was moot, and that the judgment was a "legal nullity" that "had no effect on the rights inversely taken." Plaintiff argued that defendant's "sole remedy for an inverse taking is compensation,"

---

[3] Like the majority, because neither the Court of Appeals nor this Court reviewed the merits of the trial court's determination that plaintiff took an easement for a private purpose, I express no opinion as to the correctness of the trial court's judgment.

and that "[t]he sole inverse condemnation statutory remedy available to [defendant] is not dependent upon taking or using for a public purpose."

Before the trial court ruled on these motions, plaintiff filed a new lawsuit on 13 May 2019. In its amended complaint, plaintiff sought judgments declaring

> (1) . . . that [its] installation of the sewer line . . . was an inverse taking, (2) that inverse condemnation is [defendant's] sole remedy for the installation of the sewer pipe . . . , (3) that the remedy of inverse condemnation is time barred, (4) that given [plaintiff's] limited waiver of its defense of the statute of limitations, [defendant] is entitled to a jury trial on the issue of the amount of compensation due for the inverse taking . . . , (5) that pursuant to N.C.[G.S.] §[§] 1-259 and/or 136-114, supplemental relief be granted to order a jury trial to be held on the issue of the amount of compensation due for the inverse taking . . . , (6) that pursuant to N.C.[G.S.] §[§] 1-259 and/or 136-114, supplemental relief be granted to order the amount deposited by [plaintiff] that is being held by the Clerk of Superior Court for the benefit of [defendant] be deemed to be [plaintiff's] deposit of its estimate of just compensation for the inverse taking . . . , (7) that the [j]udgment [in the direct condemnation action] is res judicata as to any claims by [defendant] for injunctive relief or an extraordinary writ, and/or should not be applied prospectively given the recent Supreme Court of North Carolina opinion in *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 809 S.E.2d 853 (2018), and (8) the doctrines of laches, economic waste, and other similar equitable doctrines bar [d]efendant from causing the removal of the sewer pipe.

(Emphasis omitted.) Plaintiff also moved for a preliminary injunction to prevent defendant from removing or disturbing the sewer line. On 16 May 2019, defendant moved to dismiss plaintiff's declaratory judgment action, arguing it was barred by

res judicata and the prior action pending doctrine.

The trial court resolved all the motions in both actions on 21 January 2020. The trial court denied defendant's motion to enforce the judgment and petition for the writ of mandamus. Regarding its inherent authority to order injunctive relief, the trial court reasoned:

> 8. The [c]ourt has the inherent authority to enforce its own orders. However, the [c]ourt is not authorized to and refuses to expand this [j]udgment beyond its terms, read in additional terms, and/or order mandatory injunctive relief that [d]efendant did not request or plead.
>
> 9. Regardless of the [c]ourt's authority, the [c]ourt does not read the [j]udgment the way [d]efendant suggests and the [c]ourt does not agree the [j]udgment expressly or implicitly requires removal of the sewer line. Defendant could have requested the [c]ourt grant her injunctive relief before the sewer pipe was installed under her property, but she did not do so. The [c]ourt will not now require [plaintiff] to remove the sewer line.

Additionally, the trial court concluded defendant was limited to damages as a remedy because when the judgment stated that plaintiff's direct condemnation claim was "null and void," it transformed plaintiff's conduct into "an inverse condemnation." The trial court accordingly granted plaintiff relief from the judgment pursuant to Rule 60(b)(4) and (6), declaring that the judgment had no "prospective application as it relates to a challenge or objection to the existence of the underground sewer pipe and corresponding inversely condemned easement." The trial court also denied defendant's motion to dismiss the declaratory judgment action and granted plaintiff's motion for preliminary injunction.

Defendant appealed all four orders. In the direct condemnation action, the Court of Appeals reversed the order granting plaintiff relief from the judgment. *Town of Apex v. Rubin* (*Town of Apex II*), 277 N.C. App. 328, 356, 858 S.E.2d 387, 406 (2021). And although it ultimately affirmed the trial court's order denying defendant's motion to enforce the judgment, the Court of Appeals vacated the portions of the trial court's order that declared plaintiff took the title to the easement by inverse condemnation, the judgment was moot, and the judgment was void. *Id.* The Court of Appeals opined that defendant could separately pursue a trespass action against plaintiff and seek injunctive relief there. *Id.* at 355, 858 S.E.2d at 405. In the declaratory judgment action, the Court of Appeals applied res judicata and reversed the trial court's denial of defendant's motion to dismiss claims (1) through (7). *Town of Apex v. Rubin* (*Town of Apex III*), 277 N.C. App. 357, 371, 858 S.E.2d 364, 374 (2021). As to claim (8) concerning equitable doctrines, however, the Court of Appeals held it was not barred because it was not resolved by either the judgment or the Court of Appeals' opinion in *Town of Apex II*. *Town of Apex III*, 277 N.C. App. at 368, 858 S.E.2d at 373. It also held the prior action pending doctrine did not apply. *Id.* at 369, 858 S.E.2d at 373–74. Regarding the preliminary injunction, the Court of Appeals held defendant did not carry her burden to show it was improper and affirmed. *Id.* at 370–71, 858 S.E.2d at 374. Plaintiff and defendant cross-filed petitions for discretionary review, and this Court allowed both parties' petitions.

As one can see from this relatively sparse overview of the history of this case,

it is procedurally complex. But at bottom, there are only a few core questions necessary to the resolution of this appeal: first, whether the trial court erred when it denied defendant's motion to enforce the judgment, and second, whether the trial court erred when it denied defendant's motion to dismiss the declaratory judgment action.[4]

Questions of law are reviewed de novo. *Slattery v. Appy City, LLC*, 385 N.C. 726, 729, 898 S.E.2d 700, 704 (2024). Matters committed to the trial court's discretion are reviewed for abuse of discretion. *See Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010). An error of law constitutes an abuse of discretion. *Slattery*, 385 N.C. at 729, 898 S.E.2d at 704.

Looking first to the motion to enforce the judgment, the majority accurately explains the many ways that the trial court misunderstood the law of takings, largely parroting the misstatements of law advanced by plaintiff. And in determining whether the trial court abused its discretion when it denied defendant's motion to enforce the judgment, these errors certainly cast doubt as to whether the trial court was soundly exercising its discretion. Should any doubt remain, however, the question is put to rest by the trial court's decision to not invoke its inherent authority in this case. *See Crist v. Moffatt*, 326 N.C. 326, 331–32, 389 S.E.2d 41, 44 (1990)

---

[4] Notably, plaintiff did not make any arguments regarding the Court of Appeals' decision to reverse the trial court's order granting plaintiff relief from the judgment. Accordingly, that issue has been abandoned.

(reviewing the trial court's invocation of its inherent authority for abuse of discretion).

The state constitution generally vests the judicial power in the General Court of Justice. N.C. Const. art. IV, § 1. Courts inherently may " 'do all things that are reasonably necessary for the proper administration of justice[ ]' . . . when constitutional provisions, statutes, or court rules fail to supply answers to problems or when courts find themselves compelled to provide solutions that enable the litigative process to proceed smoothly." *State v. Buckner*, 351 N.C. 401, 411, 527 S.E.2d 307, 313 (2000) (quoting *In re Alamance Cnty. Ct. Facilities*, 329 N.C. 84, 94, 405 S.E.2d 125, 129 (1991)). Although a court may not use its inherent power to increase its jurisdiction, *State v. Gravette*, 327 N.C. 114, 124, 393 S.E.2d 865, 871 (1990), trial courts retain jurisdiction after judgment to enforce compliance, *see Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987).

The procedural posture of this case was and is unique. After the trial court dismissed plaintiff's direct condemnation action and plaintiff's appeal was exhausted, defendant should have commenced her own trespass action against plaintiff to remedy plaintiff's ongoing incursion onto her property. *See State Highway Comm'n v. Thornton*, 271 N.C. 227, 240, 156 S.E.2d 248, 258 (1967); *McDowell v. City of Asheville*, 112 N.C. 747, 750, 17 S.E. 537, 538 (1893) (agreeing that municipalities that exceed their eminent domain power "may be treated as a trespasser and sued in ejectment"). Instead, defendant opted to pursue injunctive relief through a motion to

enforce the judgment. At the time the trial court considered the motion, the case had already been lingering for nearly five years, and the law of the case was that the taking was unconstitutional because it was for a private purpose. And today, the case has languished for nearly a decade, and the law of the case remains the same. Given this unique procedural posture and the need for swift resolution of this controversy, the trial court—whether it recognized it or not—"f[ound] [it]se[lf] compelled to provide solutions that [would have] enable[d] the litigative process to proceed smoothly." *Buckner*, 351 N.C. at 411, 527 S.E.2d at 313. For this reason, it appears that it was an abuse of discretion for the trial court to not invoke its inherent authority and decide how to remedy plaintiff's ongoing incursion onto defendant's property, including through injunctive relief.[5] I therefore concur in the decision to

---

[5] I concur with the majority that whatever remedy the trial court eventually orders, the trial court must "take care to ensure that money damages do not merely give [defendant] the value of the property taken from her in 2015." After all, the state constitution guarantees that "[n]o person shall be . . . in any manner deprived of his . . . property, but by the law of the land." N.C. Const. art. I, § 19. The "law of the land" requires the government to justify a taking of private property with a public use/benefit and just compensation. *E.g.*, *Johnston v. Rankin*, 70 N.C. 550, 555 (1874). Thus, the government may *never* take for a non-public use/benefit—*even upon payment of just compensation. Thornton*, 271 N.C. at 241, 156 S.E.2d at 259 ("[The land] is [the landowner's] and he may not be compelled to accept its value in lieu of it unless it is taken from him for a public use."). The United States Constitution provides similar protections. *See* U.S. Const. amends. V, XIV.

In other words, "[t]o take [a landowner's] property without his consent for a non-public use, even though he be paid its full value, is a violation of . . . the [state] [c]onstitution . . . and . . . the [Federal] Constitution . . . ." *Thornton,* 271 N.C. at 241, 156 S.E.2d at 259. The law of the case here is that plaintiff took the easement for a private purpose, so to award defendant only the value of the easement in 2015 would require her to accept just compensation for a private taking—an outcome that would render the public use requirement a nullity and is violative of both the Federal Constitution and the state constitution and

affirm *Town of Apex II* in part and reverse it in part and to remand for further proceedings for further resolution of defendant's motion to enforce the judgment.

Turning to the declaratory judgment action, defendant argues that the Court of Appeals erred when it did not dismiss the entirety of the 2019 declaratory judgment action. She argues that plaintiff's second suit was foreclosed by res judicata and the prior action pending doctrine. The majority opinion resolves this issue by applying the prior action pending doctrine to vacate *Town of Apex III* and remand with instructions to dismiss the declaratory judgment action. Because this Court should instead rely on res judicata and collateral estoppel, I respectfully concur in the result only as to this portion of the majority's opinion.

Under the prior action pending doctrine, "[t]he pendency of a prior action between the same parties for the same cause in a state court of competent jurisdiction works an abatement of a subsequent action either in the same court or in another court of the state having like jurisdiction." *Clark v. Craven Reg'l Med. Auth.*, 326 N.C. 15, 20, 387 S.E.2d 168, 171 (1990). "[A] prior action is pending until its determination by final judgment," *id.*, but "a prior action which is pending in the appellate division may serve as a prior action pending for the purpose of basing a judgment of abatement in a subsequent action between the same parties upon the same issues," *id.* at 21, 387 S.E.2d at 172.

---

therefore unavailable as a remedy. *See Shore v. Edmisten*, 290 N.C. 628, 633, 227 S.E.2d 553, 558 (1976) (stating a court cannot order remedies that are unconstitutional).

In 2016, the trial court entered a judgment in the direct condemnation action dismissing plaintiff's claim. Defendant did not advance any counterclaims in her answer. As such, the only "claim for relief" in the direct condemnation action was plaintiff's direct condemnation claim. When the trial court dismissed that claim, it was a final judgment. And when the Court of Appeals dismissed plaintiff's appeal as untimely and this Court denied discretionary review, the direct condemnation action was concluded—i.e., it was no longer pending.

The majority nevertheless applies the prior action pending doctrine because the issue of defendant's remedy was not resolved by the final judgment. This reasoning overlooks that in a direct condemnation action, when a government entity's proposed taking is invalidated, a defendant's remedy is to have the direct condemnation claim dismissed (unless she brought a counterclaim or sought a mandatory injunction to remove the government entity from her property). *See Thornton*, 271 N.C. at 236–41, 156 S.E.2d at 255–59. After dismissal of the direct condemnation action, a defendant may pursue further relief *in her own action.* Indeed, in *State Highway Commission v. Thornton*, this Court stated:

> The Commission [(i.e., the predecessor to the Department of Transportation)] entered upon the land in reliance upon its own opinion as to its authority. If that opinion was correct, it entered lawfully and these proceedings cannot be dismissed, the defendants' only remedy being a determination of the reasonable compensation to be paid. If that opinion was erroneous, the *defendants are entitled to have this proceeding dismissed, leaving them to whatever rights they may have against those who have trespassed upon their land and propose to continue to do so.*

271 N.C. at 240, 156 S.E.2d at 258 (emphasis added). Thus, when the trial court dismissed plaintiff's direct condemnation claim, defendant had obtained her remedy in that action. At bottom, the direct condemnation action was concluded, rendering the prior action pending doctrine inapplicable.

I nevertheless concur in the decision to dismiss the 2019 declaratory judgment action because it was barred by the doctrines of res judicata and collateral estoppel. Under the doctrine of res judicata, which is also known as "claim preclusion," "a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). "The doctrine prevents the relitigation of 'all matters . . . that were or should have been adjudicated in the prior action.' " *Id.* (quoting *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 412, 428, 349 S.E.2d 552, 556 (1986)). The essential elements of res judicata are (1) a final judgment on the merits in the previous suit, (2) an identical cause of action, and (3) identical parties (including their privies). *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413–14, 474 S.E.2d 127, 128 (1996). Res judicata may not be avoided by shifting legal theories or asserting a new or different ground for relief. *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 30, 331 S.E.2d 726, 735 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E.2d 29 (1986).

Res judicata works in tandem with its sister doctrine: collateral estoppel. *See Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880. Under this doctrine, which is also

known as "issue preclusion," "the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." *Id.* The essential elements of collateral estoppel are (1) a final judgment on the merits in a previous suit; (2) identical issues involved; (3) the issue was actually and necessarily litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined. *State ex rel. Tucker*, 344 N.C. at 414, 474 S.E.2d at 128–29.

"Whereas res judicata estops a party or its privy from bringing a subsequent action based on the 'same claim' as that litigated in an earlier action, collateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880. "The two doctrines are complementary in that each may apply in situations where the other would not and both advance the twin policy goals of 'protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.' " *Id.* (quoting *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993)).

In its 2019 action, plaintiff sought eight declarations. In its first claim, plaintiff sought declaratory judgment "that the installation of the sewer line . . . was an inverse taking." Through this claim, plaintiff seeks to relitigate its taking of the sewer easement. Although it tried to cloud its claim by rebranding it an "inverse taking," as

the majority explains, inverse condemnation and direct condemnation are two sides of the same coin; the principal difference is who initiates the claim. Plaintiff cannot avoid res judicata by changing its legal theory. Moreover, the validity of plaintiff's taking of the sewer easement was actually and necessarily determined in the direct condemnation action, implicating collateral estoppel as well.

Plaintiff also sought declaratory judgments that "inverse condemnation is [defendant's] sole remedy for the installation of the sewer pipe of her property" and that "the [j]udgment [in the direct condemnation action] is res judicata as to any claims by [defendant] for injunctive relief or an extraordinary writ, and/or should not be applied prospectively given the recent Supreme Court of North Carolina opinion in *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 809 S.E.2d 853 (2018)." (Emphasis omitted.) These questions were presented by plaintiff's motion for relief from judgment in the direct condemnation action and are resolved today by this Court. Accordingly, these issues are also barred from relitigation in the declaratory judgment action.

Finally, plaintiff requested a host of miscellaneous declaratory judgments: "that the remedy of inverse condemnation is time barred," "that . . . [defendant] is entitled to a jury trial on the issue of the amount of compensation due for the inverse taking," "that . . . supplemental relief be granted to order a jury trial to be held on the issue of the amount of compensation due for the inverse taking," "that . . . supplemental relief be granted to order the amount deposited by [plaintiff] that is

being held by the Clerk of Superior Court for the benefit of [defendant] be deemed to be [plaintiff's] deposit of its estimate of just compensation for the inverse taking," and "the doctrines of laches, economic waste, and other similar equitable doctrines bar [d]efendant from causing the removal of the sewer pipe." These requests presuppose that inverse condemnation is the only recourse available to defendant to remedy plaintiff's conduct; indeed, they are part and parcel of plaintiff's attempt to limit defendant to compensation pursuant to an inverse condemnation claim. Accordingly, these requests either were or should have been resolved in the direct condemnation action—or they will be upon remand for further resolution of the motion to enforce the judgment. I therefore concur in the decision to vacate *Town of Apex III* and remand with instructions to dismiss the declaratory judgment action.

For these reasons, I respectfully concur in part and concur in the result only in part.